Mary B. Card, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania School Employes' Retirement Board, Respondent.

Argued February 1, 1984, before Judges WILLIAMS, JR., COLINS and BLATT, sitting as a panel of three.

*Lynne L. Wilson,* with her, *Catherine C. O'Toole,* for petitioner.

*Marsha V. Mills,* Assistant Chief Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., July 12, 1984:

Mary B. Card appeals from the decision of the Public School Employes' Retirement Board denying her application to purchase pension credits for her years of employment with the Farmers Home Administration (FHA), an agency of the United States Department of Agriculture. The Board determined that the type of duties and responsibilities Card performed for FHA did not qualify as "service as an administrator, teacher or instructor in the field of education for any agency or department of the Government of the United States . . . ," as prescribed by Section 3207(1)(b) of the Public School Employes' Retirement Code of 1959, Act of June 1, 1959, P.L. 350, Art. II. §207, 24 P.S. §3207(1)(b).[1] Furthermore, the Board deter-

---

[1] The full text of the section reads:

§ *Credit for out-of-state service*

(1) Any contributor shall receive credit for the following periods of service: Provided, That he makes application according to the provisions of article v, section 505 subsection (3) and makes back contributions according to the provisions of article III, section 302 subsection (5):

. . .

mined that the retirement fund was not estopped from declining Card's request to purchase credits for prior government service by virtue of having previously advised Card that she was eligible to purchase such credit. For the reasons which follow, we affirm the decision of the Board.

The uncontested facts underlying this appeal are reflected in the record and in the findings of the Board. From 1935 to 1951, Card was employed by FHA in various job titles, ranging from assistant clerk-stenographer to supervisor and office manager assistant. Throughout her employment, Card's primary responsibility was to train full-time employees and work-study students at FHA to perform a variety of clerical and accounting procedures involved in FHA's operation. In the performance of her training responsibilities, Card traveled to FHA offices

---

(b) service as an administrator, teacher or instructor in the field of education for any agency or department of the government of the United States whether or not the area served was under the jurisdiction of the United States: Provided, That in no case shall credit be allowed for service of less than one (1) year.

The section was repealed by the Public Employes' Retirement Code of 1975, Act of October 2, P.L. 298, No. 96 §2. Its subject matter is now contained in 24 Pa. C.S.A. §8304(b), which reads, in pertinent part:

§8304. *Creditable nonschool service*

(b) *Limitation on nonschool service.*—Creditable non school service credit shall be limited to:

. . .

(4) Service as an administrator, teacher, or instructor in the *field of public education* for any agency or department of the government of the United States whether or not such area was under the jurisdiction of the United States. (Emphasis added.)

The Board concedes that Card's claim is governed by the 1959 Act.

throughout the State of Florida instructing groups of 3 to 12 employees. Although Card was certified as a teacher by the State of Florida, teaching certification was not a requirement of her position.

In September of 1965, Card became employed as a public school teacher by the Troy Area School District. She remained so employed until June of 1978, when she reached mandatory retirement age. In 1972, several years prior to her retirement, Card applied to the Pennsylvania State School Employes' Retirement System to purchase pension credit for the years she was employed by FHA. She was advised that she could purchase pension credit for up to twelve years of public school service by paying a maximum of $15,330.48 into the retirement fund. She was told that she could purchase these credits any time prior to retirement. Card did not purchase any credit due to financial inability to do so. She inquired again in 1974 regarding her eligibility to purchase pension credits for her FHA employment. The response she received from the Board confirmed the information she was previously given. Card made two inquiries in 1975, but received no reply. Finally, in October of 1977, eight months before her forced retirement, Card wrote to the Board again to inquire about the procedure for purchasing the credits. This time, the Retirement System wrote to Card stating that it needed information and verification of her positions and duties with FHA, and that a determination of her eligibility to purchase additional service credits would be made after receipt of her documentation. Several communications later, on July 31, 1978, Card was notified of the Board's denial of her request. An administrative hearing was held in November of 1979 in response to Card's submitting a letter of exception to the Board's decision. The final adjudication denying Card's request was issued on December 15, 1981.

In challenging the Board's decision, Card argues that both the nature of the duties she performed for FHA and the percentage that her instructional responsibilities represented of her total job responsibilities brings her within the ambit of the term "teacher" as it has been generally construed within the Education Code. Furthermore, she contends that the terms "education" and "field of education" are expansive enough to encompass her FHA job description. The Board, on the other hand, contends that §3207 must be construed to imply that the creditable service must be in public education, and that, therefore, Card was not a "teacher" within the meaning of the controlling statutory provision.

Despite the invitation of both parties that we issue some broad pronouncement regarding the proper construction of §3207, we prefer to focus our analysis more narrowly. Thus, we decline to decide whether Card's job responsibilities made her a "teacher" within the meaning of the statute. Nor will we decide whether §3207 must be construed to imply service in a public school system.[2] Rather, we believe that this case can and should be decided on the basis of whether Card's duties were "in the field of education." We think the answer to that question must be that they were not.

Nowhere in the Code are the terms "field of education," "education," or "educational" defined. The reluctance of the Legislature to attempt to define these terms is understandable, not only because of the difficulty of devising a definition which does not rely on using either the very term one seeks to define or

---

[2] The Board contends that the Legislature, by specifying in §8304(b)(4) of the Retirement Code of 1975 that creditable federal service must be in the field of *public school* education, was merely clarifying the intent of the 1959 Act.

some other equally elusive term,[3] but also because of the need to allow the concepts to grow and evolve in response to changes in the societal interests which are served by a literate and informed populace. When the courts of this Commonwealth have construed these terms, it has consistently been with a liberal brush. Thus, the courts cite again and again the following broad description of "educational":

> The word taken in its full sense, is a broad, comprehensive term, and may be particularly directed to either mental, moral or physical faculties, but in its broadest and best sense it embraces them all, and includes, not merely the instructions received at school, college, or university, but the whole course of training—moral, intellectual and physical." Appeal of Gilden, 406 Pa. 484, 492, 178 A.2d 562, 566 (1962); Girard School District v. Pittenger, 481 Pa. 91, 99, 392 A.2d 261, 265 (1978); St. Sophia Religious Association of Ukrainian Catholics, Inc. v. Township of Cheltenham, 27 Pa. Commonwealth Ct. 237, 239, 365 A.2d 1389, 1390 (1976).

But however broadly we have tended to apply the term "education", we have done so with respect to activities which have as a primary objective the maintenance and support of a learning environment. Our research has produced, and Card has referred us to no case in which activities were deemed educational or within the field of education where those activities were not related to an *ultimate* objective of dissemi-

---

[3] Webster's Third New International Dictionary 723 (1976) defines education as "the act or process of educating or being educated . . . the act or process of providing with knowledge, skill, competence, or usu. desirable qualities of behavior or character or of being so provided esp. by a formal course of study, instruction or training."

nating training, knowledge or information. It is the fact that Card's job responsibilities for FHA were primarily, if not exclusively designed to further FHA's ultimate objective of efficiently processing and servicing mortgages, rather than to further the development of "either mental, moral or physical faculties ... ," *Gilden,* 406 Pa. at 492, 178 A.2d at 566, that distinguishes her job activities from the types of activities which have been classified as educational in nature. Thus, the characteristic which allowed us to find that a riding academy and little league baseball were educational activities is absent from the job responsibilities which Card performed for FHA. *See Burgoon v. Zoning Hearing Board of Charlestown Township,* 2 Pa. Commonwealth Ct. 238, 277 A.2d 837 (1971); *see also Kirk Zoning Appeal,* 12 Ches. Co. Rep. 229 (1964). If Card's contention were to prevail, the "field of education" would encompass any situation in which a foreman or supervisor routinely instructs subordinate personnel in the techniques or procedures required by an employer's business. That result would be inconsistent with the common usage and understanding of the terms "educational" and "field of education," and it is thus unlikely that the legislature intended such a construction. *See Heisey v. Elizabethtown Area School District,* 67 Pa. Commonwealth Ct. 27, 445 A.2d 1344 (1982). Furthermore, the construction given the retirement statute by the Board, the entity charged with its execution and application, is entitled to considerable deference absent strong reasons to suggest that its interpretation is erroneous. *Spicer v. Department of Public Welfare,* 58 Pa. Commonwealth Ct. 558, 428 A.2d 1008 (1981).

As a second line of attack, Card argues that the Board, after having repeatedly advised her of her eligibility to purchase pension credits for her FHA service, is estopped from denying her request. With-

out deciding whether the doctrine of estoppel can ever apply in a situation where the person asserting estoppel fails to satisfy the statutory requirement for the benefit he seeks, it is clear that a finding of estoppel must always be predicated on some detrimental reliance by the person asserting the doctrine. *Novelty Knitting Mills v. Siskind*, 500 Pa. 432, 457 A.2d 502 (1983). Although we sympathize with Card's disappointment at having her expectation of an opportunity for increasing her retirement income dashed, we fail to perceive on this record how she detrimentally altered her position in reliance on the misinformation originally given her by the Board. As far as we can determine from the record, she is in no worse position than she would have been had she been originally advised of her ineligibility to purchase pension credits for her FHA service.

Accordingly, we affirm the decision of the Board.

ORDER

AND Now, this 12th day of July, 1984, the decision of the Public School Employes' Retirement Board is affirmed.

Judge COLINS dissents.