**Thomas A. SELIGA, Petitioner,**

v.

**STATE EMPLOYES' RETIREMENT SYSTEM, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 21, 1996.
Decided Aug. 28, 1996.

Thomas A. Seliga, pro se, petitioner.

Larry T. Brandenburg, Harrisburg, for Respondent.

Before PELLEGRINI and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Dr. Thomas A. Seliga (Claimant) appeals from the order of the Pennsylvania State Employes' Retirement Board (Board) denying Claimant's request to purchase nonstate service credit for employment with the National Science Foundation (NSF) from September 15, 1967 to September 14, 1968. We reverse.

 The facts as found by the Board are as follows: Claimant first became a member of the State Employes' Retirement System (Service) on July 1, 1961, by virtue of his employment with the Pennsylvania State University (PSU). During the spring of 1967, Claimant was employed as an Assistant Professor of Electrical Engineering and was a staff member of the Ionosphere Research Laboratory at PSU. At the request of Claimant's supervisor, Claimant asked for leave to serve as a program director at NSF in the area of Aeronomy, which is the study of the physics and chemistry of the upper atmosphere.

From September 15, 1967 to September 14, 1968, Claimant was employed by NSF, where he reviewed and evaluated grant proposals, and served as spokesperson for NSF in his area of scientific expertise. He also managed and monitored projects, engaged in on-site visits to many universities, and assisted in budget preparation.

Dr. Eric Walker, President of PSU from 1956 through 1970, served as a member of the National Science Board, which is operated by NSF, and was chairman of that Board from 1966–1968. He approved Claimant's leave of absence, and further testified that the NSF engaged in the education of scientists and engineers. While the NSF did not itself operate laboratories or conduct classes, it reviewed proposals and provided funding for grants to universities.

Following his year of service at NSF, Claimant returned to PSU, and then in October of 1969, he left PSU, withdrawing his retirement funds from the Service. In 1985, Claimant returned to PSU and again became a member of the Service on September 1, 1985.

In February, 1990, Claimant requested to purchase nonstate service credit for the period of his employment with NSF. The Service denied his request, as did the Appeals Committee. After an administrative hearing before the Hearing Examiner, Lynne M. Mountz, Claimant's request was again denied. The Board affirmed the decision of the Examiner.

Section 5304 The State Employees' Retirement Code (Retirement Code), 71 Pa.C.S. § 5304, provides in pertinent part that active members of the Service may purchase retirement credit for certain types of nonstate

service, including, "service as an administrator, teacher, or instructor in the field of education for any agency or department of the government of the United States...." 71 Pa.C.S. § 5304(c)(3).

The parties do not dispute that Claimant was an active member of the Service and an employee of an agency of the federal government during the year he worked for NSF; however, they do dispute whether Claimant was an administrator, teacher or instructor in the field of education for the NSF.

The Board noted that the term, "in the field of education" is not defined in the Retirement Code, but that it should be read in *pari materia* to the Public School Employees Retirement Code (School Retirement Code), 24 Pa.C.S. §§ 8101–8534. In particular, the Board held that the term "in the field of education" must be construed to mean "in the field of public school education," which is the terminology used in parallel provision found in Section 8304(b)(4)[1] of the School Retirement Code.

The Board acknowledges that the federal statute describing the "functions" of the NSF states that the NSF is first of all mandated, "to initiate and support basic scientific research and programs to strengthen scientific research potential and *science education programs*...." 42 U.S.C.A. 1862(a)(1) (Supp.1996) (emphasis added). The Board also acknowledges that an essential part of Claimant's job, as program director for the Aeronomy Program at the NSF, was the management and distribution to American universities of federal funding for research and educational purposes. Nonetheless, the Board denies that Claimant's position was in the field of education because, "Claimant occupied a position and performed duties that are not analogous to those performed by public school administrators." (Board Opinion at 11, May 6, 1996).

In response, Claimant argues that the doctrine of *in pari materia* simply has no rational application in the present case, and because of this basic error, the Board wrongfully concluded that Claimant's position at the NSF was not in the field of education. We agree.

 It is a principle of statutory construction that when the legislature adopts a statute it must be presumed that it does so with full knowledge of existing statutes relating to the same subject. *Hutskow v. Washowich*, 156 Pa.Cmwlth. 655, 628 A.2d 1202 (1993), *appeal denied*, 536 Pa. 633, 637 A.2d 293 (1993), *citing, Commonwealth v. Milano*, 300 Pa. Superior Ct. 251, 446 A.2d 325 (1982). Thus, where a section of a statute contains a given provision, the omission of that provision from a similar section is significant to show a different intention existed. *Barbieri v. Shoyer*, 83 Pa.Cmwlth. 556, 478 A.2d 149 (1984). Moreover, as a general rule, pension statutes are to be liberally construed in favor of the pensioner, although the consequences of a particular interpretation may be considered when a statute is subject to more than one interpretation. *Hutskow, citing, Pennsylvania State Lodge of the Fraternal Order of Police by Bascelli v. Bailey*, 128 Pa. Cmwlth. 72, 562 A.2d 985 (1989), *aff'd sub nom. Pennsylvania State Lodge of the Fraternal Order of Police by Bascelli v. Hafer*, 525 Pa. 265, 579 A.2d 1295 (1990).

The Statutory Construction Act of 1972 provides:

§ 1932 Statutes in pari materia

(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.

(b) Statutes in pari material shall be construed together, if possible, as one statute.

1 Pa.C.S. § 1932.

 Cases which have used the doctrine of *in pari materia* to construe the intent of a given statute, have stressed the identical origins of the statutes and the similarity of language in the provisions which are to be read *in pari materia*. *Hutskow; Barrett v. Department of Education*, 51 Pa.Cmwlth. 462, 414 A.2d 763 (1980). In the instant case, neither of these factors is present.

1. 24 Pa.C.S. § 8304.

It is not suggested by the Board that the School Retirement Code, applying to public school employees, and the Retirement Code, applying to all state employees, have identical origins. Moreover, the Retirement Code is applicable to a different class of persons than is the School Retirement Code, and specifically contemplates that such federal service credit in the field of education will be purchased by employees of state related universities and PSU. 71 Pa.C.S. § 5304(3).

Although the provisions in question in both Codes relate to the purchase of retirement credit for nonstate service, the language in these provisions differs, in that there is additional, limiting language in the School Retirement Code. If we presume, as we must, that the legislature adopted the School Retirement Code with full knowledge of existing statutes relating to the same subject, then we must conclude that the legislature intentionally attached an additional eligibility requirement for school retirees who wanted to purchase nonstate service retirement credit. This additional requirement was that the nonstate service must be in the field of "public school education," 24 Pa.C.S. § 8304(4), rather than just, "in the field of education." 71 Pa.C.S. § 5304(3).

■ Thus, because we reject the Board's argument that the two provisions of the different retirement codes must be read as one, we also reject the Board's conclusion that nonstate administrative service in the field of education must be closely analogous to public

school administration service to qualify as credited service.

We also reject this conclusion because there are essential differences between the duties of a school administrator and those of a university administrator, and the duties of a university administrator, especially an administrator of graduate, as opposed to undergraduate education, closely parallel Claimant's duties at NSF. Administrators at the university level develop and plan undergraduate and graduate education programs, establish funding needs, distribute funds, and assesses program effectiveness, responsibilities similar to those undertaken by Claimant at NSF. Although these duties may sometimes be part of a school administrators' job, they are commonly the job of a university administrator. Moreover, because funding for graduate education in science is dependant on funding for scientific research, which provides the graduate student with stipends and tuition payments, the decisions made by Claimant on whether to fund certain research in a given university directly affected graduate education.

Thus, Claimant's duties at NSF were very similar to the duties of a college or university administrator, and his decisions regarding funding of research and evaluations of projects had a direct impact on graduate education. For these reasons, and because the basic mission of the NSF is research and education, we hold that Claimant's employment with NSF was creditable nonstate service.[2]

2. The decisions in *Card v. Pennsylvania School Employes' Retirement Board*, 83 Pa.Cmwlth. 602, 478 A.2d 510 (1984) and *Panko v. Public School Employes' Retirement System*, 89 Pa.Cmwlth. 419, 492 A.2d 805 (1985), relied on by the Board, are readily distinguishable. In *Card*, the Claimant worked for the Farmers Home Administration (FHA). Mrs. Card's claim was that she worked as a teacher, training FHA employees to perform a variety of clerical and accounting skills, necessary for more efficiently processing and servicing mortgages. Unlike the instant case, where the NSF's mission is educational and Claimant's administrative duties had as their objective "the maintenance and support of a learning environment", the FHA, as an agency, had no educational objectives, and Mrs. Card's activities were deemed not to be in the field of education.

The *Panko* decision construed the School Retirement Code and held that Mr. Panko who taught manual arts to adults in a Veterans' Administration hospital did not serve in the field of public education, because, "public school education does not have as its goal rehabilitating mentally and physically disabled adults; public school education seeks to educate and advance children aged six to seventeen and to teach them to become responsible members of society." *Id.* 492 A.2d at 808. Thus, as discussed above, unlike the Retirement Code, the statutory language in the School Retirement Code necessarily results in the *Panko* decision that the teaching service in the nonstate agency must be closely analogous to public school teaching which focuses on children and not adults, in order to qualify as creditable service. Thus, *Panko*, decided in reference to the School Retirement Code, is irrelevant here.

Accordingly, we reverse the order of the Board denying Claimant's request to purchase nonstate service credit and remand for proceedings in accordance with the foregoing opinion.

## ORDER

AND NOW, this 28th day of August, 1996, the order of the Pennsylvania State Employes' Retirement Board in the above-captioned matter is hereby reversed and the case is remanded for proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.

KELLEY, Judge, dissenting.

I respectfully dissent. I believe that the order of the Pennsylvania State Employees' Retirement Board should be affirmed.

Section 5304 of the State Employees' Retirement Code (Retirement Code) provides, in pertinent part, that active members of the State Employees' Retirement System may purchase retirement credit for certain types of nonstate service, including "service as an administrator, teacher, or instructor in the field of education for any agency or department of the government of the United States...." 71 Pa.C.S. § 5304(c)(3). Contrary to the opinion of the majority, I do not believe that claimant's one-year position with the National Science Foundation (NSF) constituted service "in the field of education."

Claimant was employed by the NSF from September 15, 1967 to September 14, 1968. At that time, the functions of the NSF were as follows:

(1) to develop and encourage the pursuit of a national policy for the promotion of basic research and education in the sciences;

(2) [t]o initiate and support basic scientific research and programs to strengthen scientific research potential in the mathematical, physical, medical, biological, engineering, and other sciences, by making contracts or other arrangements (including grants, loans, and other forms of assistance) to support such scientific activities and to appraise the impact of research upon industrial development and upon the general welfare;

(3) at the request of the Secretary of Defense, to initiate and support specific scientific research activities in connection with matters relating to the national defense by making contracts or other arrangements (including grants, loans, and other forms of assistance) for the conduct of such scientific research;

(4) to award, as provided in section 10, scholarships and graduate fellowships in the mathematical, physical, medical, biological, engineering, and other sciences;

(5) to foster the interchange of scientific information among scientists in the United States and foreign countries;

(6) to evaluate scientific research programs undertaken by agencies of the Federal Government, and to correlate the Foundation's scientific research programs with those undertaken by individuals and by public and private research groups;

(7) to establish such special commissions as the Board may from time to time deem necessary for the purposes of this Act; and

(8) to maintain a register of scientific and technical personnel and in other ways provide a central clearinghouse for information covering all scientific and technical personnel in the United States, including its Territories and possessions.

Section 3 of the National Science Foundation Act of 1950, ch. 171, 64 Stat. 149 (1950), as amended by section 1 of Pub.L. No. 86–232, 73 Stat. 467 (1959).

Claimant's position at the NSF was that of Director of the Aeronomy Program (Program Director). This Program supported research on the upper atmosphere, including thermospheric and mesospheric dynamics and coupling, airglow, aurora and related atomic and molecular processes, ionospheric structures, dynamics, irregularities, plasma turbulence and the interactions with other regions of the atmosphere. Reproduced Record (R.) at 130a. Included in claimant's application for a leave of absence from the Pennsylvania State University was a description of the responsibilities of the Program

Director which stated, in pertinent part, as follows:

> The incumbent of this position is responsible for the planning and administration of aeronomy within the framework of legislation, agency policies, missions, objectives and resources and serves as spokesperson for the Section/Division with regard to the scientific community. The incumbent is responsible for the planning, coordination, and management of basic and applied research, facilities, and other scientific activities primarily through Federal grants and contracts to academic institutions, non-profit, non-academic research institutions, professional organizations and the private sector.

*Id.* When describing the purpose of his leave of absence, claimant stated that he would be responsible for reviewing and selecting aeronomy research proposals submitted by workers throughout the country. R. at 125a.

While claimant no doubt performed valuable work at the NSF, I cannot conclude that such work was "in the field of education." *Certainly one of the functions of the NSF* was to promote basic research and education in the sciences. However, this fact alone does not constitute a sufficient nexus to the educational process to consider claimant's particular duties as an administrator for that agency within the limiting scope of section 5304(c)(3) of the Retirement Code.

The primary method by which the NSF achieved its purposes was by supporting scientific research through grants, loans and other forms of financial assistance. Claimant's administrative duties were not directly related to the actual delivery of educational instruction to students. I believe that the thrust of the nonstate service provision of the Retirement Code focuses upon the provision of educational instruction and not upon those activities which may only be incidentally within the generic definition of "education."

It is apparent from the Board's own regulations that it does not construe the term "field of education" as encompassing all types of service in a federal agency which might have an impact on education. Section 243.6 of the Board's regulations provides as follows:

> (d) Ineligibility for creditable nonstate service. Creditable nonstate service ... as an administrator, teacher or instructor in the field of education rendered to an agency or department of the United States Government shall exclude service rendered to the CCC, WPA, Peace Corps, VISTA, among others ... The Board will, in all instances, determine eligibility for creditable nonstate service.

4 Pa.Code § 243.6. The language of this regulation indicates that the Board specifically excluded certain types of service from being considered within the "field of education" and reserved the right to exclude other types of service.

I would affirm the order of the Board.