J-A04044-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| R.S. AND D.S., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| S.D. AND M.S. | |
| v. | |
| G.L.S., II | |
| v. | |
| S.D. | |
| v. | |
| M.S., | |
| Appellees | No. 1480 WDA 2013 |

Appeal from the Order dated August 16, 2013
In the Court of Common Pleas of Clearfield County
Civil Division at No: 2012-309-CD

DISSENTING MEMORANDUM BY STABILE, J.:    **FILED FEBRUARY 12, 2015**

I must respectfully dissent from the learned Majority's decision for two

principal reasons.  First, I believe the Majority has exceeded our standard of

review[1] by finding facts and addressing issues not raised before this Court.

---

[1] In **McMillen v. McMillen**, 602 A.2d 845 (Pa. 1992), our Supreme Court explained an appellate court's scope of review in child custody matters:

> The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it.  However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.  Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

**Id.** at 847 (citations omitted).

Second, to my knowledge, the Majority essentially has recognized for the first time grandpaternity by estoppel as a judicial doctrine in this Commonwealth. No such doctrine ever has been recognized in our law. Nonetheless, even if such a doctrine were to be recognized, I would not find circumstances present here for its application.

The sole issue properly[2] before this Court is whether the trial court erred when it failed to equitably estop Mother from terminating the visitation and custody rights of Appellants, putative grandparents, after the results of a paternity test established that Appellants' son was not the biological father of Mother's child, C.S. ("Child"). After a hearing, the trial court dismissed Appellants' complaint on the basis that Appellants did not have standing under 23 Pa.C.S.A. § 5324 (sole physical custody) to sue for custody of Child, because Appellants were not Child's grandparents.

Instead of restricting our review in this matter to the equitable estoppel issue raised and decided by the trial court, the learned Majority *sua sponte* has raised and decided the non-jurisdictional issue of whether Mother waived her right to challenge standing for failure to raise this issue at an earlier opportunity. The Majority, acting as a fact-finder, finds waiver without the benefit of an evidentiary hearing, or notice and opportunity for Mother to address this waiver issue or to explain the timing of her actions.

---

[2] Appellants also argue whether the trial court erred by not finding that continued custody by Appellants was in the best interest of Child. Because I would not find error with the trial court dismissing this action for lack of standing, I would not address the best interest issue.

- 2 -

Having determined the challenge to standing as waived, the Majority concludes, after detailed fact-finding *ab initio* from its review of the record, that Mother is equitably estopped from challenging Appellants' status as grandparents to Child. The Majority finds equitable estoppel without any evidence in the record to support the essential ingredient of detrimental reliance to equitable estoppel.

With standing and equitable estoppel decided by *sua sponte* raising issues and finding facts, the Majority compounds these errors by again *sua sponte* raising and concluding that Appellants, alternatively, have standing for partial custody of Child. The Majority accomplishes this feat by disregarding the complaint filed for full custody and by treating Appellants' complaint as if it were filed for partial custody under 23 Pa.C.S.A. § 5325. The Majority again does so without the benefit of any findings by the trial court or an opportunity by the parties to be heard on this issue.

I now set forth the reasons for my dissent. At the outset, the Majority acknowledges the central issue on appeal is whether Mother should be estopped equitably from challenging Appellants' standing (as grandparents) to dismiss Appellants' underlying custody complaint and related custody orders. Yet, despite this acknowledgment, the learned Majority takes it upon itself to circumvent this central issue by disposing of this case based on a waiver of standing claim—an issue Appellants failed to raise and preserve below or address in their appellate brief. The Majority attempts to rationalize its *sua sponte* consideration of this waiver issue by reasoning this

- 3 -

issue is an innate component of Appellants' estoppel claim because Mother's ten-month delay in raising standing is subsumed in Appellants' estoppel argument.

My review of the record reveals that Appellants did not assert waiver as a defense to Mother's standing challenge at any time before the trial court or this Court. It is well established that issues not raised in the lower court are waived and cannot be raised for the first time on appeal. *See* Pa.R.A.P. 302(a); *see also Green v. Green*, 69 A.3d 282, 287 (Pa. Super. 2013) (concluding that an issue cannot be raised for the first time on appeal). Because it was this Court that raised the waiver issue, not surprisingly, this issue of waiver also is not presented in Appellants' 1925(b) statement of issues for appeal. This absence provides a second basis for waiver of this issue on appeal to this Court. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived."). The issue of waiver also does not appear in any of Appellants' statement of questions in their brief to this Court. The issue again is waived. *See* Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in terms and circumstances of the case[.]"). Even if this issue were not expressly stated in the questions presented, this Court still would not be justified in addressing this claim because it is entirely absent from any briefing submitted by Appellants to this Court. *See* Pa.R.A.P. 2119(a); *see also Burgoyne v. Pinecrest Cmty. Ass'n*, 924 A.2d 675 (Pa. Super.

2007) (the failure to develop an argument with citation to and analysis of relevant authority waives the issue on appeal).[3]

With specific reference to the issue of standing, our Supreme Court further has explained, courts are "prohibited from raising the issue of standing *sua sponte*. 'Whether a party has standing to maintain an action is not a jurisdictional question.'" ***In re Nomination Petition of deYoung***, 903 A.2d 1164, 1168 (Pa. 2006). In ***deYoung***, our Supreme Court expressly rejected the notion that "standing can be raised by [a] court *sua sponte*" because it is intertwined with subject matter jurisdiction. ***Id.*** at 1167-68. Hence, if courts are prohibited from raising the issue of standing on their own accord, then, by that same logic, the issue of waiver of a standing challenge likewise, cannot be raised *sua sponte* in this case.

To the extent the Majority states it may raise the issue of waiver of standing *sua sponte* because the issue is subsumed by Appellants' estoppel argument, I strongly disagree.[4] The doctrine of equitable estoppel, as discussed ***infra,*** requires proof of an inducement relied upon by another to their detriment. The issue of waiver, as raised by the Majority, concerns

---

[3] It is likely unfair to speak in terms of Appellants waiving this issue, as it suggests some fault on the part of Appellants. This Court has raised the issue. Appellants never have urged the trial court or this court to consider the issue of waiver.

[4] Although the Majority does not cite any rule of appellate procedure regarding equitable estoppel subsuming a standing waiver, I presume it refers to the "fairly suggested" language of Pa.R.A.P. 2116 ("[T]he statement of question will be deemed to include every subsidiary question fairly comprised therein.").

whether Mother had the right even to raise her challenge to standing based upon unreasonable delay in raising the issue. The timing consideration in the standing waiver issue exists wholly apart from any consideration regarding the elements of equitable estoppel. Simply stated, the substance of an equitable estoppel claim does not subsume the procedural question of whether a challenge to standing has been raised timely.

Having determined that the issue of standing waiver was properly before this Court, the Majority, relying principally upon *Kellogg v. Kellogg*, 646 A.2d 1246 (Pa. Super. 1994), concludes that Mother waived any right to challenge standing by not raising this issue at an earlier time. Although the Majority relies upon *Kellogg*, I am not convinced *Kellogg* was properly decided. With respect to custody actions, Pa.R.C.P. No. 1915.5(a) quite clearly requires that a person raise **only** issues of "jurisdiction of the person" or "venue" by way of preliminary objection within twenty days of service of the pleading to which they object. Preliminary objections to civil actions similarly are limited. *See* Pa.R.C.P. No. 1028(a)(1). Standing is not among the defenses that must be raised preliminarily. Yet, the *Kellogg* court re-wrote Rule 1915.5(a) through case law to include standing as a third defense that must be preliminarily raised within twenty days when responding to a custody complaint.[5] In my view, the Majority correctly

---

[5] By including standing as a part of Rule 1915.5(a) through case law, the court creates a trap for practitioners who rely upon the clear and unequivocal language of the rule for guidance. *Kellogg* was decided some 20 years ago. If standing is to be included in the required defenses that must be raised preliminarily to a custody complaint, the rule should be

moves away from the mechanical inclusion of standing within the strict time constraints of Rule 1915.5(a), recognizing the issue of standing can be fluid in custody cases. Because Rule 1915.5(a) does not include standing among the defenses that must be preliminarily raised, it is my view standing should be treated like any other defense not subject to waiver if not raised within a prescribed time under our rules.

Regardless of whether standing is to be properly pled under Rule 1915.5(a), I nonetheless, on the merits of this issue, cannot conclude that Mother waived her right to raise the issue of Appellants' standing. The record is devoid of any hearing, evidence, or any fact-finding by the trial court on this timeliness issue (because it was not raised by Appellants). The only issue heard by the trial court prefatory to this appeal was Appellants' estoppel argument. There was no hearing or determination by the trial court as to whether Mother was entitled to raise her standing challenge. Nonetheless, the Majority renders its own factual findings contrary to our standard of review by stating:

> Mother claimed that she suspected that Putative Father was not C.S.'s birth father and that she advised him of her doubts. While Mother could not prove her suspicions that Appellants were not genetic relatives of C.S. until she obtained the results of [the] DNA testing, that does not excuse Mother's *protracted delay* once she acquired the DNA results during the ongoing custody proceedings. Mother obtained the results of a private DNA test during June 2012; however, she did not assert her standing challenge until April 2013, ten months later. Rather than assert a standing challenge immediately after receiving confirmation, Mother filed additional pleadings seeking to reduce Appellants' custodial rights for various reasons unrelated to standing.

properly amended so as not to prejudice practitioners admitted after 1994 not entirely familiar with historical case law.

Maj. Mem. at 12 (emphasis added). The Majority concludes although Mother was not required to raise a standing challenge at the outset of the case, she certainly was required to do so as soon as she had tangible confirmation that Appellants were not genetically related to Child. The Majority makes these findings without an evidentiary record that would have provided Mother an opportunity to explain the timing of her actions, assuming timeliness may be dispositive of her standing challenge.

There is no evidence of record to suggest that Mother in fact knew of Child's biological father until DNA testing was accomplished. The Majority treats prior knowledge as a *fait accompli* without any findings by the trial court. No doubt, Mother thought to pursue this issue after experiencing numerous acrimonious and contentious court proceedings with putative grandparents for custody of Child. Mother's timing also may be explained by the fact that counsel did not represent her until the filing of her standing challenge, a possible change of circumstance in her case. In all likelihood, Mother's standing challenge was the result of counsel's legal review of the proceedings, a task probably beyond Mother's capabilities. I, however, like the Majority, am in no position to make findings of fact in this regard.

The point I wish to make clear is that Mother may very well have explained satisfactorily her timing on this standing issue if given the opportunity to do so, and if the issue of waiver was properly raised before the trial court. The Majority impermissibly engages in fact-finding to reach its conclusion without the benefit of any record or fact-finding by the trial

court, and without any ability to weigh the testimony or credibility of the parties.

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, . . . an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*See In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (citations omitted); *see also D.G. v. D.B.*, 91 A.3d 706, 707 (Pa. Super. 2014) (noting that a reviewing court's standard of review "does not vest in the reviewing court the duty or the privilege of making its own independent determination").

Having dispatched Mother's standing issue on the basis of waiver, the Majority proceeds next to address the issue of equitable estoppel, the only issue properly before this Court. *See* Maj. Mem. at 13. The Majority concludes that Appellants met their burden of proof with respect to equitably estopping Mother from challenging their status as Child's grandparents. The doctrine of "equitable estoppel" is one of fundamental fairness, designed to preclude a party from depriving another of a reasonable expectation when the party inducing the expectation, albeit gratuitously, knew or should have known that the other party would rely on that conduct to his detriment. *See Jacob v. Shultz-Jacob*, 923 A.2d 473, 480 (Pa. Super. 2007).

- 9 -

In this regard, acting again impermissibly as a trial court, the Majority finds and then concludes:

[O]ur review of the case law did not reveal a single case that addressed a non-biological grandparent's ability to invoke equitable estoppel against a birth parent[, like Mother,] who *not only actively misled* them to believe the child was their grandchild, but also consented to [their] exercise of custodial rights.

. . . .

Mother represented over a two-year period that Appellants were C.S.'s birth grandparents. Although Mother *suspected from the outset* that Putative Father was not C.S.'s birth parent, she identified him as the father on the child's birth certificate and executed an acknowledgment of paternity that identified him as C.S.'s father. Similarly, her actions *encouraged* Appellants to fashion and maintain a grandparent-child relationship with C.S.

. . . . [Mother] mounted a largely *unsuccessful campaign to erode* the terms of the custody arrangement [with Appellants].

. . . .

The trial court ignores Mother's *inaction* and consent to Appellants' custody rights in declining to apply equitable estoppel to prevent Mother from invoking the results of a paternity test to strip Appellants of their custody rights. Appellants *have always held themselves* out as grandparents, and with Mother's *express consent and endorsement*, they have exercised legitimate, court-ordered custodial rights as C.S.'s grandparents since May 2012.

Mother's actions and representations regarding C.S.'s parentage for the first two years of the child's life and her silence in agreeing to the initial custody order induced Appellants to believe that C.S. was their grandchild. Appellants relied upon Mother's representations and omissions to their detriment, and would be *severely prejudiced* if Mother were permitted to invoke the results of the genetic testing at this point in order to deny their *beneficial relationship* with C.S. Thus, we conclude that the trial court erred in holding that equitable estoppel was inapplicable.

Maj. Mem. at 16-19 (emphasis added).

I disagree with the Majority's conclusion that Appellants met their burden of proof to establish detrimental reliance on their equitable estoppel claim based upon Mother's misrepresentations regarding their genetic ties to

Child. At the hearing on Mother's motion to dismiss/vacate, Appellants testified on their own behalf and offered the testimony of their son, putative father. The Majority finds detrimental reliance, in sum, based on the fact Appellants operated under the assumption created by Mother that they were the biological grandparents to Child. Beyond this, neither the Majority's memorandum, nor my review of the record, yields any evidence that would support the conclusion that Appellants suffered any detriment sufficient to support an equitable estoppel claim, nonetheless substantial prejudice as claimed by the Majority. The Majority's cumulative and repeated references to Mother's actions does not establish or answer whether Appellants suffered any detrimental reliance.

Appellants enjoyed the benefit of acting as grandparents to Child, but the loss of this benefit to which they were not entitled, alone, does not establish detrimental reliance. The record does not demonstrate Appellants are in any worse position now than they would have been if originally advised they were not Child's grandparents. ***See Card v. Commonwealth of Pennsylvania, Pennsylvania School Employes' Retirement Bd.***, 478 A.2d 510, 514 (Pa. Cmwlth. 1984) (noting that petitioner, despite repeatedly being advised of eligibility to purchase pension credits, could not claim equitable estoppel as record did not demonstrate her position was detrimentally changed, since she was in no worse position than she would have been had she initially been informed correctly of her ineligibility). Appellants have not produced any evidence of a detrimental change in

position to support their claim. Equitable estoppel always must be predicated upon some detrimental reliance. ***See id.*** If the modicum of evidence offered by Appellants here was all that was necessary to claim grandparent status by equitable estoppel, there virtually would be no case in which parentage is disputed where third parties would not be able to establish standing on an equitable estoppel claim.

Moreover, I disagree with the Majority's finding of equitable estoppel and hence, reinstating custody in Appellants, on a more fundamental level. The focus in an equitable estoppel claim is upon the expectation created and the detrimental reliance upon that expectation. Here, Appellants assert equitable estoppel against Mother to gain grandparent status in order to seek custody of Child. Invocation of the doctrine was for the benefit of Appellants. In every custody matter, however, the paramount focus is upon the best interests of the child. ***See*** 23 Pa.C.S.A. § 5328(a). Nowhere in Appellants' equitable estoppel claim, or as found by the Majority, is the best interests of Child considered before conferring non-biological grandparent status upon Appellants so they can continue to seek custody of Child. This no doubt, is because the "best interests" of a child is not an element of an equitable estoppel claim. Therefore, I am in agreement with the trial court that considerations underlying the doctrine of paternity by estoppel[6] do not

---

[6] "[P]aternity by estoppel continues to pertain in Pennsylvania , but it will apply only where it can be shown, on a developed record, that it is in the best interests of the involved child." ***K.E.M. v. P.C.S.***, 38 A.3d 798, 810 (Pa. 2012).

- 12 -

apply to grandparents. This is buttressed by the fact that our Legislature has seen fit to codify paternity by estoppel, but has not done so similarly for grandparents. *See* 23 Pa.C.S.A. § 5102. Succinctly stated, there is no grandpaternity by estoppel in Pennsylvania.

Next, in determining that the doctrine of equitable estoppel would apply instantly, the Majority "observe[s] that Appellants attained standing to pursue partial custody of C.S. pursuant to 23 Pa.C.S.[A.] § 5325(2), relating to grandparent's standing for partial custody[.]" Maj. Mem. at 19. The parties here do not dispute the fact Appellants initiated their custody action under 23 Pa.C.S.A. § 5324, for sole physical custody of Child. The Majority, by invoking Section 5325, essentially amends Appellants' custody complaint *sua sponte* from one seeking full custody to partial custody of Child. Because partial custody was not the relief sought in Appellants' pleadings, I disagree with the Majority's invocation of Section 5325.[7]

I am not without sympathy for Appellants' situation, *i.e.*, loving and caring for a child as one's own grandchild only to discover later the lack of any genetic link. I have no doubt Appellants feel a bond with Child and are angered at Mother. Nonetheless, for the reasons set forth above, I

---

[7] Even were we to assume Appellants are the grandparents of Child for purposes of this appeal, they still would be unable to assert standing under Section 5324 of the Act to seek custody of Child. It is undisputed that Appellants are not the parents of Child, do not stand *in loco parentis* to him, and Child has not resided with Appellants for at least 12 consecutive months. Therefore, Appellants would be unable to assert standing under Section 5324 of the Act to seek custody of Child even if they were considered grandparents for purposes of this custody action.

respectfully dissent from the Majority's decision to find Mother's standing challenge to be waived, to confer grandparent status upon Appellants premised upon equitable estoppel, to convert Appellants' claim for custody to one for partial custody, and to reinstate the March 11, 2013 order granting Appellants partial custody subject to a best interest analysis pursuant to § 5328(a).

For all the foregoing reasons, I respectfully dissent.