684 A.2d 112

**Henry R. HOERNER, Jr., Appellee,**

v.

**COMMONWEALTH of Pennsylvania, PUBLIC SCHOOL EMPLOYEES' RETIREMENT BOARD, Appellant.**

Supreme Court of Pennsylvania.

Argued April 30, 1996.

Decided Oct. 31, 1996.

216

Kathleen Bertolette, Harrisburg, for Public School.

Richard C. Snelbaker, Mechanicsburg, for Henry Hoerner.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

The issues before this Court are (1) whether increases in a party's salary during his last year of employment pursuant to negotiated termination agreements constitute "severance payments" which are excludable from "compensation" for purposes of computing the party's "final average salary" under the Public School Employes' Retirement Code ("Retirement Code"), 24 Pa.C.S. § 8101 *et seq.,* and (2) whether the time period for which a party is entitled to receive "credited service" under the Retirement Code ends on the date a party is relieved of all employment duties or on the date of his official resignation set forth in a termination agreement. Because we find that salary increases made strictly pursuant to termination agreements are tantamount to severance payments, such increases should not be used in calculating a party's final average salary for purposes of retirement bene-

fits. We further find that a party is entitled only to receive credited service up to the time he was formally relieved of his responsibilities and not up to an artificial date set forth in a termination agreement. Accordingly, we reverse the order of the Commonwealth Court and reinstate the decision of the Public School Employees' Retirement Board ("Board").

## FACTUAL AND PROCEDURAL HISTORY

Under the Retirement Code, the cornerstone of the benefit structure is the "standard single life annuity," which is "an annuity equal to 2% of the final average salary, multiplied by the total number of years and fractional part of a year of credited service of a member." 24 Pa.C.S. § 8102. This benefit formula is comprised of numerous terms that are defined in the Retirement Code. "Final average salary" is the "highest average compensation received as an active member during three nonoverlapping periods of 12 consecutive months." *Id.* The "compensation" used in computing the final average salary is "any remuneration received as a school employee ... **excluding any severance payments.**" *Id.* (emphasis added). "Severance payments" are defined as:

> [A]ny payments for unused vacation or sick leave and any additional compensation **contingent upon retirement including payments in excess of scheduled or customary salaries** provided for members within the same governmental entity with the same educational and experience qualifications who are not terminating service.

*Id.* (emphasis added). In computing a member's credited school service for a determination of benefits, the Retirement Code provides that "a full-time salaried school employee shall receive one year of credit for each school year or the corresponding fraction thereof." 24 Pa.C.S. § 8302(a). At issue in the instant case is the effect that appellee's termination agreements with two separate school districts have on the computation of appellee's "final average salary" and years of "credited service" for purposes of calculating appellee's retirement benefit.

1. *Employment with the Lower Dauphin School District*

On July 1, 1966, appellee enrolled in the Public School Employes' Retirement System ("PSERS") as a result of his employment as superintendent for the Lower Dauphin School District ("Lower Dauphin"). Appellee served as superintendent for Lower Dauphin from July 1, 1966 until June 30, 1985.

On July 9, 1981, appellee entered into his first employment contract with Lower Dauphin, under the terms of which appellee was to serve as superintendent of Lower Dauphin for a set term of four school years. Appellee received a 4.52% salary increase (totalling $2,250) for the 1982–83 school year under the terms of this first employment contract.[1] On October 17, 1983, appellee resigned and entered into his second employment contract with Lower Dauphin, under which he would serve as superintendent of Lower Dauphin for a set term of five school years. This second employment contract resulted in appellee receiving a 6.26% salary increase (totalling $3,250) for the 1983–84 school year.[2]

At some point in the beginning of the 1984–85 school year, a contract dispute arose over whether appellee's first employment contract or his second employment contract controlled the terms of appellee's employment. On September 17, 1984, before his five year term had ended, appellee and Lower Dauphin entered into a written termination agreement (the "Lower Dauphin Termination Agreement") in order to settle the contract dispute and to resolve differences between the two parties in educational philosophy. The Lower Dauphin Termination Agreement altered the terms of the second employment contract by requiring Lower Dauphin to pay appellee a prorated salary of $12,253.80 for the period from the start of the 1984–85 school year on July 1, 1984 through

1. This first employment contract provided that appellee was to receive annual increases during the life of this contract of $1,250 to his base salary along with the purchase of a $1,000 tax deferred annuity.

2. This second employment contract provided that appellee was to receive annual increases during the life of this contract of $1,250 to his base salary along with the purchase of a $1,000 tax deferred annuity and any discretionary increase approved by Lower Dauphin.

September 16, 1984.[3] With respect to the period from September 17, 1984 to November 30, 1984, Lower Dauphin agreed to pay appellee a prorated salary of $15,411.[4] Starting December 1, 1984, appellee was to begin a year-long sabbatical that was to end on November 30, 1985. During his sabbatical, Lower Dauphin was to pay appellee a salary of $37,500. Appellee agreed to formally resign as superintendent once his sabbatical period ended on December 1, 1985. In addition, appellee was to receive $31,367.31 for unused sick leave and vacation days as well as a lump sum payment of $51,985.20 on January 7, 1985.

As a result of the Lower Dauphin Termination Agreement, Lower Dauphin reported to PSERS that appellee's compensation was $72,391.88 for the 1984–85 school year and $3,090.64 for the 1985–86 school year. Appellee's reported 1984–85 compensation constituted a 31% increase (totalling $17,192.04) over his compensation for the 1983–84 school year ($55,199.84). The 31% increase far exceeded the increases appellee had received under his employment contracts, the largest of which was a 9.3% increase (totalling $3,834.96) that was awarded for the 1980–81 school year. Appellant asserts that the 31% increase should not be included in appellee's "compensation" for the 1984–85 school year because it so far departs from the normal compensation paid as to clearly constitute a severance payment instead of compensation for purposes of computing appellee's retirement benefits.

2. *Employment with the Coatsville Area School District*

On June 30, 1985, appellee terminated his sabbatical from Lower Dauphin prematurely because he entered into an employment contract with the Coatsville Area School District ("Coatsville") on April 18, 1985. Under the terms of the Coatsville employment contract, Hoerner was to serve as

3. The $12,253.80 figure was based on an annual salary of $57,450. This results in a daily salary of $157.40 per day and appellee received that daily figure for 78 days.

4. The $15,411 figure was based on an annual salary of $75,000. This results in a salary of $205.40 per day and appellee received that daily figure for 75 days.

superintendent of Coatsville beginning July 1, 1985 for a set term of four school years. This contract set appellee's salary for the 1985–86 school year at $60,000. Under the terms of the contract, appellee received a 4.7% salary increase (totalling $2,819.96) for the 1986–87 school year.[5]

On October 22, 1987, before his four year term had ended, appellee and Coatsville entered into a written termination agreement (the "Coatsville Termination Agreement") in order to settle differences over the interpretation of appellee's employment contract. Under the terms of the Coatsville Termination Agreement, appellee was to receive a lump sum payment of $58,398 on January 5, 1988 and he was to be released from performing all his duties and obligations as superintendent on January 6, 1988.[6] The termination agreement also required that appellee resign as superintendent on June 30, 1988. Appellee was to also receive $24,046.26 for unused sick days, personal days, vacation days and purchase of retirement service credit. Moreover, appellee was to receive $75,000 in twenty-six installments for the 1987–88 school year, which Coatsville reported to PSERS as appellee's compensation for the 1987–88 school year. This reported figure constituted a 15.46% increase (totalling $12,180.22) over the compensation reported by Coatsville to PSERS on behalf of appellee for the 1986–87 school year ($62,819.00). Appellee's previously largest percentage salary increase during his brief tenure at Coatsville was 4.7% for the 1986–87 school year.

### 3. *Hoerner's Retirement Claim*

On May 26, 1988, appellee applied to PSERS for retirement benefits. On August 23, 1988, PSERS notified appellee that it would not use the 15.46% increase for the 1987–88 school year from Coatsville because it believed that the 15.46% increase (totalling $12,180.22) did not constitute "compensation" but

**5.** Under the terms of the Coatsville contract, appellee was to receive annual salary increases equal to the percentage increase in the Philadelphia Consumer Price Index for the previous year.

**6.** On that date, appellee was to remove himself from Coatsville property, return all keys to Coatsville, and remove any personal items.

rather was a "severance payment" that was given in an effort to encourage appellee's retirement. This resulted in PSERS informing appellee that his retirement benefit would be calculated based upon a final average salary of $67,597 and 35.67 total years of credited service.

On September 18, 1989, appellee appealed the PSERS determination of his final average salary to the PSERS Appeals Committee. On March 29, 1989, the PSERS Appeals Committee notified appellee that PSERS properly excluded from the calculation of his final average salary the 15.46% salary increase he received for his final year pursuant to the Coatsville Termination Agreement.

On September 28, 1989, PSERS reviewed appellee's compensation from Lower Dauphin and notified him that the 31% salary increase (totalling $17,192.04) he received from Lower Dauphin for the 1984–85 school year would be excluded from the calculation of appellee's final average salary, and that it was only giving him credit for service performed up to January 6, 1988 since that was the last day he rendered employment services in exchange for regular remuneration to Coatsville. PSERS then recalculated appellee's retirement benefits using a final average salary of $62,358 [7] and 35.42 years of credited service.[8]

7. In arriving at this final average salary, PSERS used a compensation of $56,949.88 for the 1984–85 school year (the 31% increase year) and $37,950.20 for the 1987–88 school year (the 15.46% increase year). PSERS arrived at $56,949.88 for the 1984–85 school year by looking to appellee's salary before the September 17, 1984 Lower Dauphin Termination Agreement where appellee received a monthly salary of $4,380.76 for the ten months in which he received two paychecks and $6,571.14 for the two months in which he received three paychecks. PSERS arrived at $37,950.20 for the 1987–88 school year by looking to appellee's salary before the October 22, 1987 Coatsville Termination Agreement where he received a bi-weekly pay rate of $2,458 and applied this rate until January 5, 1988, appellee's last day for receiving credited service.

8. In *Christiana v. Public School Employes' Retirement Board*, 543 Pa. 132, 669 A.2d 940 (1996), this Court held that annuities purchased for Christiana by the local school board could not be included in the calculation of his retirement benefit since the annuities were not remuneration that was based on any standard salary schedule. While the record in this case shows that appellee had annuities purchased for

On October 9, 1989, appellee appealed PSERS' recalculation and reduction of his benefits to the PSERS Appeals Committee. On October, 15, 1990, the PSERS Appeals Committee rejected his appeal. Appellee then timely filed a request for an administrative hearing. On September 15, 1992, an administrative hearing was held before an independent hearing examiner. On April 1, 1993, the hearing examiner issued an opinion recommending that appellee's appeal be denied since the adjustments made by PSERS to appellee's retirement account were proper.

Appellee filed exceptions to the hearing examiner's opinion with the Public School Employes' Retirement Board (the "Board"). After considering the evidence presented to the hearing examiner, the Board upheld the adjustments made by PSERS to the calculation of appellee's retirement benefits.

Appellee appealed the Board's decision to the Commonwealth Court. In a published opinion, the Commonwealth Court reversed the decision of the Board and found that the "salary" increases appellee received pursuant to the two termination agreements should be included in calculating appellee's final average salary since the termination agreements expressly characterized these increases as salary while other amounts paid in accordance with the termination agreements were expressly characterized as severance payments. The Commonwealth Court also held that appellee should have received credited service up to June 30, 1988 since that was the official date of his resignation set forth in the Coatsville Termination Agreement.

The Board filed a petition for allowance of appeal from the Commonwealth Court order. On October 3, 1995, we granted *allocatur.*

him and the amount of the annuities were reported to PSERS as compensation, the issue of whether the annuities constituted retirement-covered compensation is not before this Court since PSERS has never attacked the validity of including the annuities in the calculation of appellee's final average salary.

## DISCUSSION

■ Our scope of review on an appeal from a final adjudication of an administrative board is limited to a determination of whether there has been an error of law, whether there has been a violation of constitutional rights, or whether the necessary findings of fact are supported by substantial evidence. *Christiana v. Public School Employes' Retirement Board,* 543 Pa. 132, 138–40, 669 A.2d 940, 943 (1996). For the reasons stated herein, we find that the Commonwealth Court committed an error of law and we reinstate the order of the Board concerning both appellee's final average salary and his years of credited service.

### 1. *Computation of "Final Average Salary"*

■ As described above, a person's retirement benefit is 2% of his "final average salary" multiplied by his number of years of "credited service." 24 Pa.C.S. § 8102. A person's "final average salary" is the highest average of his "compensation" for three nonoverlapping periods of 12 consecutive months during participation in the PSERS. *Id.* "Compensation" includes any remuneration a person receives during his service as a school employee exclusive of "severance payments" he receives from a school district. *Id.* "Severance payments" excluded from the definition of compensation include payments for unused vacation or sick leave and any additional payments contingent on inducing a person to retire which are in excess of scheduled or customary salary increases. *Id.*[9]

The regulations promulgated pursuant to the Retirement Code further limit the definition of "compensation" for purposes of computing retirement benefits to exclude:

> a bonus, severance payment or other remuneration or similar emoluments received by a school employe during his school service not based on the standard salary schedule for which he is rendering service. It shall exclude payments for unused sick leave, unused vacation leave, bonuses for

---

**9.** Payments made to appellee for unused sick leave and vacation days pursuant to the two termination agreements are not at issue in this appeal.

attending school seminars and conventions, special payments for health and welfare plans based on the hours employed or any other payment or similar emoluments which may be negotiated in a collective bargaining agreement for the express purpose of enhancing the compensation factor for retirement benefits.

22 Pa.Code § 211.2.

As this Court recently noted in *Christiana, supra,* the restrictive definitions of compensation which are set forth in the Retirement Code and related regulations "reflect the Legislature's intention to preserve the actuarial soundness of the retirement fund by excluding from the computation of employes' final average salary all payments which may artificially inflate compensation for the purposes of enhancing retirement benefits." *Christiana, supra* at 141, 669 A.2d at 944. In order to uniformly apply these restrictive definitions, the following test for determining whether remuneration constitutes a severance payment has been developed:

> Under the Code, all payments, other than for regular professional salary, which are part of an agreement in which a professional member agrees to terminate school service by a date certain, are prima facie severance payments. The claimant may rebut a prima facie case only by showing that the payment is in accord with the scheduled customary salary scale within the School District for personnel with the same education and experience qualifications who are not terminating service.

*Id.* at 143, 669 A.2d at 945, *quoting Dowler v. Public School Employes' Retirement Board,* 153 Pa. Commw. 109, 115–16, 620 A.2d 639, 643 (1993).

Here, appellee received 31% (totalling $17,192.04) and 15.46% (totalling $12,180.22) salary increases pursuant to the two termination agreements. These two salary increases were more than three times the largest percentage increase appellee received during his employment with either school district. Also, the two termination agreements expressly state that they were entered into in order to resolve disputes

between the parties and to set a date certain for appellee to terminate school service. Thus, sufficient evidence existed for the Board to find that a *prima facie* case was made that the remuneration that appellee received because of the two termination agreements were severance payments.

■ Moreover, no evidence was presented that the salary increases paid in accordance with the two termination agreements were based on a standard salary scale or schedule within either school district for personnel with the same educational and working experience as appellee who were not terminating service. Thus, we conclude that the salary increases appellee received as part of the two termination agreements constituted severance payments which should be excluded from compensation for purposes of computing appellee's final average salary under the Retirement Code.[10] *See Christiana, supra* ($19,200 payment in form of annuities were severance payments since remuneration was not based on standard salary schedule for which Christiana was rendering

---

**10.** Appellee argues that these increases were not severance payments since neither increase was expressly "contingent on retirement." The Board, in interpreting severance payments, has found retirement to include the termination of an employee's relationship with an individual employer. *See In re: Claim of Thomas F. McDonell*, No. 081–30–2746 (Opinion of the Public School Employes' Retirement Board, dated March 8, 1991). This interpretation has been adopted by the Commonwealth Court in *Dowler, supra*. We cannot find this interpretation to be erroneous or inconsistent with the Retirement Code since such an interpretation will fulfill the General Assembly's intention to preserve the actuarial soundness of the retirement fund by excluding payments from the computation of a member's final average salary by excluding all payments which artificially inflate a member's compensation. *Christiana, supra* at 140–42, 669 A.2d at 944. Appellee also contends that the salary increases he received pursuant to the two termination agreements were not severance payments because these amounts were classified as salary by the two termination agreements. This argument fails since as an independent, administrative agency governed by statute, PSERS cannot be bound by characterizations of money payments made to a PSERS member pursuant to a private contractual settlement to which it is not a party. *See Watrel v. Commonwealth, Dep't. of Education*, 88 Pa. Commw. 1, 488 A.2d 378 (1985), *aff'd*, 513 Pa. 61, 518 A.2d 1158 (1986) (State Employees' Retirement Board not obligated to accept contributions on behalf of a member where contributions were made in accordance with a settlement agreement to which Board was not a party).

service); *Dowler, supra* (payment to employee so that school board could purchase retirement credit for military service was severance payment since nothing indicated payment was in accord with customary salary scale within school district, even if employee worked beyond scope of normal duties after signing agreement); *Laurito v. Public School Employes' Retirement Board*, 146 Pa. Commw. 514, 606 A.2d 609 (1992) ($16,000 salary adjustment for employee's devoted service was severance payment rather than compensation since it was not established that it was customary for an individual of similar experience within the school district to receive a similar adjustment).

2. *Credited Service*

The other aspect of the calculation of appellee's retirement benefit in dispute is the length of credited service appellee should receive for pension purposes. The Board determined that appellee was only entitled to 35.42 years of credited service when computing his retirement benefits since the last day he performed his employment duties for Coatsville was January 5, 1988. Appellee, however, contends that he is entitled to receive credit for service until June 30, 1988, or 35.67 years of credited service, because that was the date of his official resignation set forth in the Coatsville Termination Agreement.

Section 8102 of the Retirement Code defines "Credited service" as: "[S]chool or creditable nonschool service for which the required contributions have been made. or for which salary deductions or lump sum payments have been agreed upon in writing." 24 Pa.C.S. § 8102. Section 8302(a) of the Retirement Code instructs that for purposes of computing retirement benefits, credited service is calculated as follows:

in computing creditable school service of a member for a determination of benefits, a full-time salaried school employee shall receive one year of credit for each school year or corresponding fraction, thereof, in accordance with the proportion of the full school year for which the required regular member contributions have been made.

24 Pa.C.S. § 8302(a). The following three statutory definitions are implicated by Section 8302(a):

"School service." Service rendered as a school employee.

"Salaried employee." A school employee who is compensated on the basis of an annual salary.

"School employee." A person engaged in work relating to a public school for any governmental entity and for which he is receiving regular remuneration as an officer, administrator or employee excluding, however, any independent contractor or a person compensated on a fee basis.

24 Pa.C.S. § 8102. Thus, under the Retirement Code, an employee can only receive retirement credit for the time period where the employee actually engaged in work for the school district and received regular remuneration for that work. In cases of doubt, the Board determines whether an individual is a school employee for purposes of the Retirement Code. 22 Pa.Code § 211.2.[11]

Here, the Coatsville Termination Agreement provided that:

Effective January 6, 1988, the School District hereby releases Dr. Hoerner from any and all duties and obligations arising out of his appointment as District Superintendent on the first day of April, 1985, and under the Agreement approved by the School District on the eighteenth day of April, 1985. Dr. Hoerner shall remove himself from School District property and shall return all keys to the District. Only those items of personal nature shall be removed from District property.

Under the plain terms of the termination agreement, appellee ceased performing work for Coatsville on January 5, 1996. Moreover, the facts show that appellee no longer engaged in work for Coatsville in return for regular remuneration after January 5, 1988. In particular, the Coatsville Termination Agreement set appellee's salary for the period of January 6, 1988 to June 30, 1988 at approximately $37,500. Appellee,

11. Section 211.2 provides in pertinent part that "[I]n all cases of doubt, the Board will determine whether a person is a school employe within the meaning of the Code."

however, only performed what the Board correctly classified as *de minimis* consulting services for Coatsville during that time period. It was not an abuse of the Board's discretion to find that such a significant sum of money in exchange for such a small amount of work cannot be properly classified as regular remuneration. Instead, the $37,500 salary that appellee received for this time period can reasonably be classified as part of the overall settlement of a dispute between the parties. Therefore, the Board correctly determined that appellee ceased being a school employee entitled to earn credited service for his retirement benefit on January 5, 1988 instead of basing it on the artificial date set forth in the termination agreement.[12]

Even though a member is not engaged in work relating to a school district for which he receives regular remuneration, the Retirement Code allows a member to earn credited service for an approved leave of absence. 24 Pa.C.S. § 8302(b). Under the Retirement Code, a member can receive an approved leave of absence "for activated military service or which has been approved by the employer for sabbatical leave, service as an exchange teacher, service with a collective bargaining organization or professional study." 24 Pa.C.S. § 8102. The regulations promulgated pursuant to the Retirement Code provide the following guidance on receiving credited service for approved leaves of absence:

[C]redited service shall be granted to an active member for an approved leave of absence for either sabbatical leave or for professional study and growth or as an exchange teacher as authorized under the applicable provisions of the code. Members may be granted other types of leaves of absence, not within the aforementioned categories, but such leaves

12. As previously stated, appellee argues that he should have been granted credited service for the period from January 6, 1988 to June 30, 1988 because that was the "effective date of retirement" as defined by the Section 8102 of the Retirement Code. This argument fails since the Retirement Code does not require that a member be granted credited service for all time prior to the member's formal retirement date. Rather, credited service need only be given for actual work the member provides to the school district in which he receives regular remuneration in return.

shall not entitle the member to any credited service during the period of the leave.

22 Pa.Code § 213.2(b).

Here, no mention is made of appellee being granted a leave of absence as of January 6, 1988. Thus, appellee is not entitled to receive credited service through June 30, 1988, the official resignation date set forth in the Coatsville termination agreement, under the approved leave of absence provision of the Retirement Code.[13] Therefore, we conclude that the Board did not err in finding that appellee ceased being a school employee entitled to earn credited service as of January 5, 1988, the last day appellee performed actual employment duties for regular remuneration, rather than June 30, 1988, the official resignation date set forth in a termination agreement.

## CONCLUSION

For the reasons stated above, we reverse the order of the Commonwealth Court and reinstate the decision of the Board.

NIX, Former C.J. and NEWMAN, J., did not participate in the consideration or decision of this case.

---

13. While appellee took an approved sabbatical as part of his termination agreement with Lower Dauphin, that period of time is not at issue in this case. Instead, the issue at hand is the effect the Coatsville Termination Agreement had on the period of time from January 1, 1988 to June 30, 1988 for purposes of determining appellee's years of credited service.