696 A.2d 1186

**Ronald G. SHAFER, Appellee,**

v.

**STATE EMPLOYES' RETIREMENT BOARD, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 9, 1996.

Decided June 18, 1997.

Harold E. Dunbar, Kathleen B. Bertolette, Brian E. Mc-Donough, Harrisburg, for State Employes' Retirement Bd.

Elliot A. Strokoff, Harrisburg, for Ronald G. Shafer.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

The issue before this Court is whether a member of the State Employes' Retirement System ("SERS") who teaches at a university in a foreign country must establish the existence of an employer/employee relationship with an agency or department of the United States government in order for that member to purchase "creditable nonstate service" retirement credit pursuant to Section 5304(c)(3) of the State Employes' Retirement Code ("Retirement Code"), 71 Pa.C.S. § 5304(c)(3). Because we hold that Section 5304(c)(3) of the Retirement Code requires a SERS member to establish the existence of an employer/employee relationship with an agency or department of the United States government in order to purchase creditable nonstate service for retirement benefits, and because appellee has failed to demonstrate the existence of an employer/employee relationship with an agency or department of the United States government, we reverse the order of the Commonwealth Court.

## BACKGROUND

Under the Retirement Code, the cornerstone of the benefit structure is the "standard single life annuity," which is "an annuity equal to 2% of the final average salary, multiplied by the total number of years and fractional part of a year of credited service of a member." 71 Pa.C.S. § 5102. This benefit formula places great importance on years of credited service because a member's retirement benefit increases as he accumulates more years of credited service. The Retirement Code allows a member to purchase additional years of credited service for certain service known as "creditable nonstate service." 71 Pa.C.S. § 5304. "Creditable nonstate service" is service performed by a member even though the member was not a "state employee" [1] when that service was rendered. 71

1. "State employee" is defined as "[a]ny person holding a State Office or position under the Commonwealth, employed by the State Government of the Commonwealth, in any capacity whatsoever, except an indepen-

Pa.C.S. § 5102. The Retirement Code, however, explicitly limits the purchase of creditable nonstate service to specifically defined categories of service. The category of creditable nonstate service in dispute in this case is as follows:

> [S]ervice as an administrator, teacher, instructor in the field of education for any agency or department of the government of the United States, whether or not such area was under the jurisdiction of the United States.

71 Pa.C.S. § 5304(c)(3).[2] At issue in this case is whether the nonstate service rendered as an administrator, teacher or instructor in the field of education which is referenced in this provision requires the existence of an employer/employee relationship with a United States government agency or department and if so, whether appellee can purchase creditable nonstate service for the academic year he spent as a Fulbright Scholar teaching at a university in Egypt.

### 1. *Factual Background*

On August 22, 1970, appellee was hired as a professor of English at Indiana University of Pennsylvania ("IUP"). By virtue of this employment, appellee became a member of the SERS.

In 1977, appellee applied for a Senior Fulbright–Hays Grant ("Fulbright Grant") at Ain Shams University in Cairo, Egypt for the 1978–1979 school year. It is not in dispute that Ain Shams University is a public university in Egypt that has no connection or affiliation with the United States government.

The purpose of the Fulbright Grant program is to promote international cooperation for education, cultural advancement,

dent contractor or any person compensated on a fee basis." 71 Pa.C.S. § 5102.

**2.** Section 5304(c)(3) of the Retirement Code was amended in 1991 by the Act of August 5, 1991, P.L. 183, No. 23. The provision cited here is the pre-amendment version. The parties agree that the pre-amendment version applies in this case since appellee applied to purchase the creditable nonstate service before the amendment. Also, the parties agree that the 1991 amendment would not affect the outcome of this case because the 1991 amendment only specified that a member was not eligible to purchase creditable nonstate service pursuant to Section 5304(c)(3) for service rendered while the member was a student.

and a mutual understanding between the United States and other countries through educational and cultural exchange.[3] The approval process for appellee's Fulbright Grant application required a review and recommendation by the Council for International Exchange of Scholars, the American Embassy in Cairo, Egypt, and the English Department and Administration of Ain Shams University. After approval by these entities, the Board of Foreign Scholarship,[4] which consists of twelve members appointed by the President of the United States, had final approval over appellee's Fulbright Grant application.

In a letter dated July 28, 1978, appellee received notification from the International Communication Agency that he had been selected to receive the Fulbright Grant to teach American Literature at Ain Shams University. Enclosed with the July 28, 1978 letter was a grant authorization form which provided that appellee would receive round trip transportation to Cairo, Egypt for him and his spouse, a stipend of $1870 per month payable in advance by the United States Embassy, and a one-day orientation program in Washington, D.C. The July 28, 1978 letter also contained a document entitled "Terms and Conditions of Fulbright–Hays Grants." The Terms and Conditions document expressly provided that:

> [A] person accepting such a grant is not by virtue thereof an official or employee of the International Communication Agency or other agency of the Government of the United States of America, or of any agency of the Government of the host country.

The Terms and Condition document also contained the following conditions: (1) appellee could not accept other compensatory employment in Egypt without approval of the American Foreign Services Post; (2) appellee was expected to perform other duties as requested by the American Foreign Services Post or the International Communication Agency during extended recesses or vacation periods for which he received his

3. *See* The Mutual Educational and Cultural Exchange Act, 22 U.S.C. § 2451.

4. The Board of Foreign Scholarships is now known as the J. William Fulbright Foreign Scholarship Board.

stipend; (3) appellee would be provided health insurance free of charge for himself only through the International Communication Agency; (4) appellee could be reassigned to another mutually agreeable position if conditions changed in Egypt; (5) appellee had to submit monthly reports and a final report as specified by the American Foreign Service Post; and, (6) if the Fulbright Grant was terminated or revoked for any reason other than physical or mental incapacitation, appellee had to repay his grant monies. After reading the Terms and Condition document, appellee accepted the Fulbright Grant by signing a statement at the end of the Terms and Conditions document which read as follows: "I accept the award and agree to abide by the conditions of the grant as specified in the attached 'Terms and Conditions of Award.'"

IUP granted appellee an unpaid leave of absence to accept the Fulbright Grant and teach at Ain Shams University. While teaching at Ain Shams University, appellee did not receive a federal "GS" wage rating like other federal government employees. Appellee also did not contribute to the federal civil service retirement system nor did he accumulate federal vacation and sick leave.

As for appellee's actual duties at Ain Shams University, he reported to, and was supervised by, Dr. Kamel Metwalli, the head of the Ain Shams University English Department. Ain Shams University approved the courses taught by appellee as well as appellee's teaching syllabus and textbooks. Ain Shams University also determined the enrollment and registration for appellee's classes, provided appellee with an office and supplies, and established the testing and grading procedures which appellee was required to utilize. Appellee testified that he felt as if he was an integral part of the Ain Shams University English Department during the year he taught there as a Fulbright Grant recipient.

While appellee taught at Ain Shams University, he complied with the terms and conditions of the Fulbright Grant by filing monthly reports with Dr. Frank W. Blanning, Executive Director of the Commission for Educational and Cultural Exchange Between the U.S.A. and A.R.E. Appellee also met with

Dr. Blanning on a weekly basis. Dr. Blanning, however, never controlled the content nor the manner in which appellee taught his courses at Ain Shams University. Also, no department or agency of the United States government ever attempted to influence or control appellee's lectures or daily activities.

At the conclusion of the 1978–1979 academic year at Ain Shams University, appellee returned to his position at IUP. Also, appellee received an IRS Form 1099 from the International Communication Agency for tax reporting purposes rather than an IRS W–2 form typically used by an employer to report wages paid to an employee during the tax year.

## 2. *Appellee's Creditable Nonstate Service Claim*

In March, 1981, appellee made a request to the SERS to purchase creditable nonstate service for the 1978–1979 school year that he taught at Ain Shams University pursuant to his Fulbright Grant. In a letter dated September 5, 1991,[5] the SERS responded that it was awaiting information from the International Communications Agency before it could rule on appellee's request. After receiving the necessary information, the SERS, in a letter dated January 30, 1992, notified appellee that his request was denied and that he was ineligible to purchase creditable nonstate service for the time spent teaching at Ain Shams University. On February 10, 1992, appellee timely appealed the denial of his request. In a letter dated April 13, 1992, the SERS Appeals Committee denied his appeal.

On May 10, 1992, appellee appealed the Appeals Committee denial and requested an administrative hearing. On April 14, 1993, an independent hearing examiner held a hearing. On November 13, 1993, the hearing examiner issued an opinion in

---

**5.** No explanation has been offered as to why the SERS took approximately ten years to respond to appellee's initial request. The Retirement Code, however, does not mandate a response time to an application similar to that made by appellee in this case. Also, appellee has never claimed that this ten year delay in responding mandated that he be allowed to purchase creditable nonstate service for the time spent at Ain Shams University pursuant to his Fulbright Grant.

which he recommended that appellee be allowed to purchase creditable nonstate service because an employer/employee relationship existed between appellee and the United States government while he taught at Ain Shams University pursuant to a Fulbright Grant.

SERS filed exceptions to the hearing examiner's recommendation with the State Employes' Retirement Board ("Board"). On January 4, 1995, the Board rejected the hearing examiner's recommendation and denied appellee's request to purchase creditable nonstate service. The Board denied appellee's request because it believed that 71 Pa.C.S. § 5304(c)(3) required the existence of an employer/employee relationship and that the facts found by the hearing examiner did not sufficiently establish such a relationship.

Appellee then appealed to the Commonwealth Court. On November 30, 1995, the Commonwealth Court, in a two-to-one decision, reversed the Board's order and remanded for computation of the amount of creditable nonstate service appellee was entitled to purchase.[6] This Court granted *allocatur* in order to determine whether a member of the SERS who is a teacher or instructor at a foreign university must establish the existence of an employer/employee relationship with an agency or department of the Unites States government in order for that member to purchase non-state retirement credit pursuant to Section 5304(c)(3) of the Retirement Code, 71 Pa.C.S. § 5304(c)(3).

6. The Commonwealth Court majority, relying on *Kapilian v. State Employes' Retirement System*, 144 Pa.Commw. 80, 600 A.2d 698 (1991), *appeal denied*, 530 Pa. 656, 608 A.2d 31 (1992), held that the portion of Section 5304(c)(3) of the Retirement Code at issue in this case does not require the existence of an employer/employee relationship. In *Kapilian*, a student was entitled to purchase creditable nonstate service for the time he spent teaching classes on a part-time basis at a university in Illinois as part of his educational responsibilities. The dissent in this case disagreed with the majority reading of *Kapilian*. First, it noted that *Kapilian* concerned a different portion of Section 5304(c)(3) which allowed a SERS member to purchase creditable nonstate service for teaching performed at a university in another state or territory of the United States. Second, the dissent, who sat on the *Kapilian* panel, also believed that *Kapilian* requires the existence of an employer/employee relationship because the student in that case was a part-time employee and that was a critical factor in deciding that case.

## DISCUSSION

■ Our scope of review on an appeal from a final adjudication of an administrative board is limited to a determination of whether the board committed an error of law, whether there has been a violation of constitutional rights, or whether the necessary findings of fact are supported by substantial evidence. *Hoerner v. Commonwealth, Public School Employees' Retirement Board,* 546 Pa. 215, 223–225, 684 A.2d 112, 116 (1996). For the reasons stated herein, we find that the Commonwealth Court committed an error of law and we reinstate the order of the Board.

### 1.  *Section 5304(c)(3)*

As described above, a person's retirement benefit under the SERS is 2% of his "final average salary" multiplied by his number of years of "credited service." 71 Pa.C.S. § 5102. The Retirement Code allows a member to purchase credited service for purposes of his retirement benefit for service known as "creditable nonstate service," which is service rendered while the member was not a state employee. The Retirement Code expressly limits what categories of creditable nonstate service a member can purchase. Appellee in this case sought to purchase creditable nonstate service for the time spent teaching in Egypt pursuant to a Fulbright Grant pursuant to Section 5304(c)(3) of the Retirement Code. Section 5304(c)(3) limits the purchase of creditable nonstate service to service performed as an administrator, teacher or instructor for an agency or department of the United States Government. 71 Pa.C.S. § 5304(c)(3). In cases of doubt, the Board determines whether a member is eligible to purchase creditable nonstate service for service he performed while he was not a state employee. 4 Pa.Code § 243.6(d).

Our determination of whether Section 5304(c)(3) requires the existence of an employer/employee relationship with a department or agency of the United States government depends upon the controlling statutory language. When reviewing a statute, we are guided by the Statutory Construction Act. *See* 1 Pa.C.S. § 1501 *et seq.* The object of statutory

interpretation is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). Statutes, or parts of statutes must be read *in pari materia* when they relate to the same class of persons or things. 1 Pa.C.S. § 1932.

Appellant argues that when Section 5304(c)(3) is read *in pari materia* with other Retirement Code provisions concerning the purchase of creditable nonstate service, one must conclude that Section 5304(c)(3) requires the existence of an employer/employee relationship. One provision of the Retirement Code which addresses the purchase of creditable nonstate service is 71 Pa.C.S. § 5304(b). Section 5304(b) of the Retirement Code, which places limitation on eligibility for all expressed categories of approved creditable nonstate service, provides the following repeated references to a previous employer:

> [A]n active member ... shall be eligible to receive credit for nonstate service provided that he ... is not entitled to receive, eligible to receive now or in the future, or is receiving retirement benefits for such service under a retirement system administered and wholly or partially paid for by any governmental agency or *by any private employer* ... and further provided, that such service is certified *by the previous employer* and contributions are agreed upon and made in accordance with section 5505.

71 Pa.C.S. § 5304(b)(emphasis added).

Another provision addressing the purchase of creditable nonstate service is 71 Pa.C.S. § 5505(a). Section 5505(a) of the Retirement Code, which mandates how a member can purchases creditable nonstate service, also provides the following references to a previous employer:

> [T]he total contributions to purchase credit for creditable nonstate service of an active member ... shall be paid either by the member, *the member's previous employer,* or some agreed upon combination of the member, *his previous employer,* and if specifically provided, the Commonwealth.

71 Pa.C.S. § 5505(a). Thus, the plain language of Sections 5304(b) and 5505(a) demonstrate that the General Assembly contemplated an employer/employee relationship before a member could purchase creditable nonstate service. Therefore, we conclude that Section 5304(c)(3), which must be read *in pari materia* with these two sections because they concern the purchase of creditable nonstate service, also requires the existence of an employer/employee relationship with an agency or department of the United States government. Such an interpretation will allow these three provisions to consistently address under what circumstances a member can purchase creditable nonstate service.

Appellant also argues that Section 5304(c)(3) requires the existence of an employer/employee relationship because other provisions of the Retirement Code equate service with employment. *See* 1 Pa.C.S. § 1921(a) (the rules of statutory construction requires that if possible, the statute must be construed to give effect to all of its provisions). Here, the Retirement Code defines "State service" as "service rendered as a State employee." 71 Pa.C.S. § 5102. "School service" is defined as "service rendered as a public school employee and credited as service in the Public School Employes' Retirement System." *Id.* A "service connected disability" is defined as "a disability resulting from an injury arising in the course of State employment." *Id.* Thus, these provisions of the Retirement Code evidence an intent on the part of the General Assembly to equate the term service with an employer/employee relationship.

■ Therefore, applying the rules of statutory construction, we conclude that Section 5304(c)(3) requires a member who provides service as a teacher or instructor for a foreign university to establish the existence of an employer/employee relationship with an agency or department of the United States government before he can purchase creditable nonstate service for that service.[7]

7. Appellee, like the Commonwealth Court majority, argues that *Kapilian,* 144 Pa.Commw. 80, 600 A.2d 698, controls this case. *See,* Footnote 6 *supra.* The *Kapilian* decision is not controlling because it concerned

Policy reasons also support the conclusion that a member who teaches at a foreign university must establish the existence of an employer/employee relationship with an agency or department of the United States government in order to be eligible to purchase creditable nonstate service pursuant to Section 5304(c)(3). The term "credited service" in the retirement benefit formula includes "state service" as well as creditable nonstate service purchased by a member. As described above, "state service" includes service rendered by the member while he is a "State employee." The Retirement Code defines a "State employee" as a person employed by the State government, except for an independent contractor or a person compensated on a fee basis. *See* 71 Pa.C.S. § 5102; Footnote 1, *supra*. If the position advanced by appellee were adopted and no employer/employee relationship needed to exist in order to purchase creditable nonstate service under Section 5304(c)(3), this would allow a member to purchase service for time he spent as an independent contractor outside of the Commonwealth even though he could not do so if he were an independent contractor for the Commonwealth. Such a result

a different portion of Section 5304(c)(3) which allows a member to purchase credited service for "service in any public school or public educational institution in any state other than this Commonwealth or in any territory or area under the jurisdiction of the United States.". Moreover, as Judge Kelley noted in his dissent in this case, the fact that *Kapilian* was a part-time employee of the University of Illinois was a critical factor in the *Kapilian* decision. The existence of an employer/employee relationship in that case negated any need for the *Kapilian* court to examine whether the service requirement of that portion of Section 5304(c)(3) required the existence of an employer/employee relationship.

Appellee also argues this conclusion is inconsistent with a decision by the Board in *In re: Account of Philip D. Smith, Jr.*, Dkt. No.1981-1, which was issued six weeks after its decision in this case. This argument fails because like *Kapilian*, the *Smith* case involved that portion of Section 5304(c)(3) which allows a member to purchase creditable nonstate service for service performed in another state or jurisdictional area of the United States. Moreover, this conclusion is consistent with the Board's decision in *In re: Account of David C. Beppler* (Feb. 3, 1988) in which the Board determined that the portion of Section 5304(c)(3) at issue in this case required the member to demonstrate the existence of an employer/employee relationship in attempting to purchase creditable nonstate service for time spent teaching pursuant to a Fulbright Grant.

would have the effect of creditable nonstate service being broader in scope than that of state service. This result cannot be supported by any specific statutory basis. Moreover, this would lead to an absurd result since the limitations imposed by Section 5304(c) on the categories of creditable nonstate service that can be purchased by a member demonstrates that the main purpose of the Retirement Code is to provide a state employee with a retirement benefit for his state service rather than his years of service outside the state. *See,* 1 Pa.C.S. § 1922(1) (in ascertaining intent of General Assembly, it is presumed that the General Assembly does not intend an absurd or unreasonable result). Accordingly, we conclude that a SERS member who desires to purchase creditable nonstate service pursuant to Section 5304(c)(3) for time he spent teaching at a university in a foreign country must demonstrate that he had an employer/employee relationship with an agency or department of the United States.

## 2. *Employer/Employee Relationship*

■ The parties here do not dispute that appellee was a teacher or instructor in the field of education during the time he spent teaching at Ain Shams University pursuant to his Fulbright Grant for purposes of Section 5304(c)(3). The parties, however, cannot agree as to whether appellee established the existence of an employer/employee relationship with an agency or department of the United States government.

■ The determination of whether a person is an employee centers on the ability of the alleged employer to control the person's physical conduct in the performance of the services for which the person was engaged. *Weatherly Area School District v. Whitewater Challengers, Inc.,* 532 Pa. 504, 508, 616 A.2d 620, 622 (1992). In order to determine whether a person is an employee, this Court has set forth the following analysis to determine whether a worker qualifies as an employee or an independent contractor:

Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for perfor-

mance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time. *Zimmerman v. Public School Employes' Retirement Board,* 513 Pa. 560, 563, 522 A.2d 43, 45 (1987). None of these factors is absolutely dispositive of a person's status as an employee and each case must be determined on its own facts. *Budzichowski v. Bell Telephone Co.,* 503 Pa. 160, 164, 469 A.2d 111, 113 (1983).

Appellee first argues that the requirement that he file monthly reports and a final report with the American Foreign Service Post absolutely shows that the United States government controlled his work. This argument fails for two reasons. First, this Court has held that the inspection of the progress of the work does not necessarily require an inference of exclusive control over the manner or performance of the work, but rather only of an interest in the result. *Cox v. Caeti,* 444 Pa. 143, 148, 279 A.2d 756, 758 (1971) (person engaged to install stone at a construction site was an independent contractor rather than an employee of construction company; evidence that construction company inspected person's work did not require finding that construction company controlled that person's work). Second, the evidence in this case demonstrates that no department or agency of the United States government exercised control over the manner in which appellee taught at Ain Shams University pursuant to his Fulbright Grant. Instead, the evidence found by the hearing examiner and the Board demonstrates that Ain Shams University, which has no affiliation with the United States government, determined the courses appellee taught, approved appellee's syllabus, selected the textbooks used by appellee for teaching his courses and provided appellee with supplies and an office. Ain Shams University also determined the enrollment and registration of the students in appellee's classes and dictated the method in which appellee was to test his students. Moreover, the evidence showed that Dr. Metwalli, the head of

the English Department at Ain Shams University, monitored and supervised appellee. Therefore, the control factor evidences that appellee was not an employee of a department or agency of the United States government's because his day-to-day work was controlled by Ain Shams University.

■ Another factor to be examined under *Zimmerman* is the terms of the agreement between the parties. Here, the Terms and Conditions document provided to appellee when he was notified of receiving a Fulbright Grant explicitly stated that his acceptance of the grant did not transform him into an official or employee of the United States government. Appellee acknowledged this statement by signing the Terms and Condition document which stated that appellee's signature evidences an understanding of the conditions imposed and an agreement to abide by the terms and conditions of a Fulbright Grant. Under Pennsylvania law, it is presumed that an adult is competent to enter into an agreement and that the signed document evidences an accurate expression of the intent of the signatories. *Estate of McGovern v. Commonwealth, State Employees' Retirement Board,* 512 Pa. 377, 384, 517 A.2d 523, 526 (1986). Therefore, the terms of the agreement factor weighs against finding that appellee was an employee of an agency or department of the United States government.

Another factor *Zimmerman* requires this Court to review is which party supplied the tools. Here, no evidence demonstrates that the United States government supplied appellee with any tools to aid in his teaching at Ain Shams University. Instead, the evidence shows that Ain Shams University supplied appellee with an office and his supplies. Thus, this factor does not weigh in favor of finding that appellee was an employee of an agency or department of the United States government.

■ Appellee also argues that he is an employee of the United States government because the Terms and Condition document dictated the grounds upon which he could be removed by an agency of the United States. The power to terminate the employment of another for cause is not by itself

sufficient to constitute an employer/employee relationship. *Cox*, 444 Pa. at 148, 279 A.2d at 758. Also, the Terms and Conditions document specified that if appellee's Fulbright Grant was terminated for any reasons other than physical and mental incapacitation, appellee had to repay his grant monies. In a traditional employer/employee relationship, a terminated employee does not normally have to repay income earned for services rendered to his employer. Thus, the termination factor in *Zimmerman* weighs against finding that appellee was an employee of an agency or department of the United States government.

Finally, this Court has often looked to how an alleged employer treats other employees in order to determine if a person is an employee of that employer. *See Zimmerman, supra.* Here, appellee was not treated like other federal employees. The evidence demonstrates that appellee was not assigned a "GS" salary rating, he did not accrue federal sick or vacation leave during his time spent teaching at Ain Shams University, and he was not eligible to participate in the federal pension system. Additionally, the evidence demonstrates that appellee was paid a monthly stipend rather than some form of salary like a typical federal employee. Moreover, appellee's stipend was reported to him for tax purposes on an IRS Form 1099 instead of the traditional W-2 that is issued for the typical employee. Thus, the fact that appellee was not treated similar to other federal employees weighs against finding that appellee was an employee of an agency or department of the United States government.

After weighing the above evidence, we must conclude that appellee has failed to demonstrate the existence of an employer/employee relationship with an agency or department of the United States government. Accordingly, we conclude that appellee cannot purchase creditable nonstate service under Section 5304(c)(3) of the Retirement Code for the time he spent teaching at Ain Shams University pursuant to a Fulbright Grant.[8]

8. Appellee argues that the following facts demonstrate that he was an employee of an agency or department of the United States government:

## CONCLUSION

For the reasons stated above, we find that a member of the SERS who teaches at a foreign university pursuant to a Fulbright Grant must establish the existence of an employer/employee relationship with an agency or department of the United States government in order for that member to purchase creditable nonstate service pursuant to Section 5304(c)(3) of the Retirement Code. Because the facts of this case do not demonstrate such an employment relationship, we reverse the order of the Commonwealth Court and reinstate the order of the Board.

NEWMAN, J., did not participate in the consideration or decision of this case.

NIGRO, J., files a concurring and dissenting opinion.

NIGRO, Justice, concurring and dissenting.

I concur in the result reached by the majority, but I write separately because I do not interpret 71 Pa.C.S. § 5304(c)(3) as requiring the existence of an employer/employee relationship in order to purchase "creditable nonstate service" retirement credit.

The express language of 71 Pa.C.S. § 5304(c)(3) requires "service as an administrator, teacher, instructor, in the field of education for any agency or department of the government of the United States. . . ." It is undisputed that Appellee's function at Ain Shams University in Egypt during the 1978–1979 school year was as a teacher. His role as a teacher, thus, clearly fulfills the statutory requirement of "service" in the field of education.

(1) his required attendance at a one-day orientation program in Washington, D.C.; (2) his grant included nursery school tuition for his one child; (3) the Fulbright Grant may have required him to perform other duties during periods of long absences; (4) he was expected to conform his conduct in accordance with the Egyptian culture; and (5) he could not obtain other remunerative employment without approval. As the Board found, we do not find that these factors show the existence of an employment relationship with the federal government or that these factors are more persuasive than the other factors which weigh strongly against finding the existence of an employment relationship.

Where appellee's claim fails, however, is the added requirement under 71 Pa.C.S. § 5304(c)(3) that service is "for any agency or department of the government of the United States...." The facts in this case suggest the beneficiary of the "service" was Ain Shams University rather than a United States Government Agency or Department. I thus join in the result reached by the Majority.