Leanne CANNONIE, Jules Dill,
P. Joseph Lutz and Ronald
Ponchione, Petitioners

v.

PUBLIC SCHOOL EMPLOYEES'
RETIREMENT SYSTEM,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted May 2, 2008.
Decided May 23, 2008.
Publication Ordered July 24, 2008.

Andrew W. Barbin, Mechanicsburg, for petitioners.

David W. Speck, Asst. Deputy Chief Counsel and Gerald Gornish, Chief Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge, and COLINS, Senior Judge.

OPINION BY Judge PELLEGRINI.

Leanne Cannonie, Jules Dill, P. Joseph Lutz and Ronald Ponchione (Retirees) appeal from an order of the Public School Employees' Retirement Board (Board) adopting the recommendation and adjudication of the Hearing Examiner denying their request to have the compensation they received as a result of providing notice of their intent to retire included as retirement-covered compensation. Because the payments were not made as part of their regular professional salary, we affirm the Board's decision.

Retirees are retired administrative employees of the Central Cambria School District (School District).[1] On August 7, 2000, the School District adopted an Administrative Compensation Plan (Compensation Plan).[2] Paragraph C of the Compensation Plan provided that an administrator who provided the Board with three years' notice of their retirement would have $10,000 added to their salary in the year notice was given and carried into the second and third years before retirement. Specifically, the Compensation Plan provided, in relevant part:

C. An Administrator who provides the Board with three years notice of his/her retirement shall have $10,000.00 plus 3.5% of his/her salary added to said salary in the first year of the final three years, with 3.5% of the first year of the final three (3) years being added to each of the second and third years. He/she agrees to waive all rights to retirement compensation, except severance of one hundred dollars and 00/100 ($100.00) per day for accumulated unused sick days over two hundred (200).

Each Retiree then sent the School District a letter giving the three-year requisite notice of his/her intent to retire in three years. As provided for in the Compensation Plan, the School District paid each Retiree an additional $10,000 and 3.5% more in salary for three years until their retirement.[3] Each Retiree then filed their own Application for Retirement with the Public School Employees' Retirement Board. Initially, the $10,000 they received each year was included as "compensation" in calculating their retirement benefits. Subsequently, PSERS sent each Retiree a Recomputation Letter advising that the School District had improperly reported the $10,000 payments as part of their compensation, that their gross monthly retirement payment would be adjusted to exclude those payments, and that the overpayment would have to be repaid.

Each Retiree appealed that decision contending their $10,000 payment was "compensation,"[4] all of which were denied by

---

1. Prior to retirement, Cannonie was the Food Service Director at Central Cambria School District; Dill was a high school principal; Lutz was the Principal at Central Cambria High School; and Ponchione was the Assistant Superintendent for Central Cambria School District.

2. The Administrative Compensation Plan provides:

The Board of School Directors of the Central Cambria School District adopts the following Administrative Compensation Plan pursuant to the "Public School Code of 1949", as amended in Section 1164 of Act 92 (24 P.S. § 11–1164).
(Reproduced Record at 188a.) Section 1164 of the School Code was added by the Act of June 29, 1984, P.L. 438, 24 P.S. § 11–1164. Section 1164 is commonly known as "Act 93" and provides for the compensation of school administrators through the adoption of a written compensation plan.

3. Ponchione and Dill each retired in 2004 and received an additional $10,000 and 3.5% more in salary for the 2001–2002, 2002–2003 and 2003–2004 school years. Lutz and Cannonie each retired in 2002 and received an additional $10,000 and 3.5% more in salary for the 2002–2003, 2003–2004 and 2004–2005 school year.

4. 24 Pa.C.S. § 8102 defines "Compensation," in relevant part, as:

Pickup contributions plus any remuneration received as a school employee excluding reimbursements for expenses incidental to employment and excluding any bonus, severance payments, any other remuneration or other emolument received by a school employee during his school service which is not based on the standard salary schedule under which he is rendering service, payments for unused sick leave or vacation leave, bonuses or other compensation for attending school seminars and conventions,

PSERS because the Public School Employees' Retirement Code (Retirement Code)[5] explicitly excluded payments made in connection with an agreement to a retiree to be used for covered compensation. They then filed a joint request for an administrative hearing which was granted and held before a Hearing Examiner. At the hearing, Ponchione stated that Paragraph C of the 2000 Compensation Plan caused him to stay with the School District for an additional three years. Dill and Lutz stated that they requested a retirement estimate from PSERS and relied upon PSERS' estimates in making a decision to retire. Lutz and Cannonie believed that based on the language in the Compensation Plan, they could give three years notice of their intent to retire, rescind that notice and keep the $30,000 additional compensation that they received during that period. All of the Retirees argued that the payments they received should have been considered part of their final average salary and eligible for consideration as compensation.

■ Relying upon the definitions of "compensation" and "severance payments"[6] found at 24 Pa.C.S. § 8102 of the Retirement Code, the Hearing Examiner determined that the payments were not compensation. He then went on to explain:

It is abundantly clear that these salary increases are akin to severance payments. The School District intended to create an incentive for experienced administrators to provide advance notice of their planned retirement in sufficient time to allow for the School District to transition more experienced personnel with their replacements. (N.T. *passim*). The yearly payments of $10,000 and the added 3.5% salary increases were made strictly pursuant to agreements between the School District and Retirees and were tantamount to severance payments. Thus, PSERS properly refused to consider them in calculating these members' retirement benefits. *Hoerner v. Com., Public School Employees' Retirement Bd.*, 546 Pa. 215, 684 A.2d 112 (1996).

(Hearing Examiner's August 1, 2007 decision.) The Hearing Examiner recommended to the Board to deny each Retiree's request to have the disputed payments included as retirement covered compensation. Retirees filed consolidated exceptions to the Hearing Examiner's decision, which were denied by the Board. The Board adopted the Hearing Examiner's findings of fact, conclusions of law and recommendation, and denied Retiree's request. This consolidated appeal by Retirees followed.[7]

> payments under health and welfare plans based on hours of employment or any other payment or emolument which may be provided for in a collective bargaining agreement which may be determined by the Public School Employees' Retirement Board to be for the purpose of enhancing compensation as a factor in the determination of final average salary. (Emphasis added.)
> "Severance payments" are defined as:
> Any payments for unused vacation or sick leave and any additional compensation contingent upon retirement including payments in excess of the scheduled or customary salaries provided for members within the

same governmental entity with the same educational and experience qualifications that are not terminating service.

5. 24 Pa.C.S. §§ 8101–8535.

6. *See* n. 3, *supra*.

7. Our scope of review of the Board's order is limited to determining whether the Board committed an error of law, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. *Golebieski v. Public School Employees Retirement Board*, 161 Pa.Cmwlth. 127, 636 A.2d 268 (1993).

■ Retirees contend that the Board erred in concluding that the payments were tantamount to severance payments because they were not contingent upon retirement. Retirees argue that the payments were "salary" because they continued to work for three years while they received the payments, and there was no requirement to retire on a specific date or ever.

In *Hoerner v. Public School Employees' Retirement Board*, 546 Pa. 215, 224, 684 A.2d 112, 116 (1996), our Supreme Court explained that the definition of compensation set forth in the Retirement Code "reflect[s] the Legislature's intention to preserve the actuarial soundness of the retirement fund by excluding from the computation of employes' final average salary all payments which may artificially inflate compensation for the purposes of enhancing retirement benefits." The Court went on to apply the following test to determine whether remuneration constituted a severance payment:

> Under the Code, **all payments, other than for regular professional salary, which are part of an agreement in which a professional member agrees to terminate school service by a date certain, are prima facie severance payments.** The Retiree may rebut a prima facie case **only** by showing that the payment is in accord with the scheduled

customary salary scale within the School District for personnel with the same education and experience qualifications who are not terminating service. (Emphasis added.)

*Id.* Although Retirees continued working while being paid $10,000 every year, and there was no requirement to retire on a specific date, the Hearing Examiner concluded and the Board agreed that the payments made to Retirees were not pursuant to a schedule or customary salary scale established for School District personnel with the same educational and experience qualifications who were not terminating service. Because Retirees do not dispute this, their argument fails.[8]

■ Retirees also argue that the Board erred in allowing PSERS to recalculate their benefits because they relied upon the estimated benefits they received from the School District and from PSERS in deciding whether and when to retire. However, as the Hearing Examiner and Board determined, the recalculation of benefits was made after each Retiree retired, and the Board had the authority to properly compute and recompute the benefits. *See Hughes v. Public School Employees' Retirement Board*, 662 A.2d 701 (Pa.Cmwlth. 1995). Because the Board is not estopped from correcting any mistakes and, in fact, is duty-bound to correct any mistakes, 24 Pa.C.S. § 8534(b),[9] Retirees' argument is

---

8. Based on how we have decided this issue, we need not address Retirees' argument regarding the definition of "severance payments" and whether the retirement notice incentive benefit here was "contingent on retirement."

Retirees believe *Hoerner* is distinguishable because that case involved a raise that was negotiated as part of a termination agreement and included wage increases that were paid after all duties had terminated, leaving no question that they were a severance incentive. However, *Hoerner* is cited only for the purpose of setting forth the test for determining

whether remuneration is salary or severance pay, not for its specific fact pattern.

9. 24 Pa.C.S. § 8534(b) provides:

Should any change or mistake in records result in any member, beneficiary, or survivor annuitant receiving from the system more or less than he would have been entitled to receive had the records been correct, then regardless of the intentional or unintentional nature of the error and upon the discovery of such error, the board shall correct the error and so far as practicable shall adjust the payments which may be

rejected.[10]

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 23rd day of May, 2008, the order of the Public School Employees' Retirement Board, dated October 4, 2007, is affirmed.

made for and to such person in such a manner that the actuarial equivalent of the benefit to which he was correctly entitled shall be paid.

10. Although Retirees argue that the Hearing Examiner and Board do not address why the salary increase Lutz received under contract is excludable, the Hearing Examiner explained in finding of fact no. 81 that Lutz additionally received a letter advising him that based on extra-duty pay for his summer school employment that he received during the 2004–2005 school year, an adjustment to his retirement account was made adding $2,727 in salary to his earnings for that year. As a result, his final average salary was adjusted to $81,123 and his total contributions were then $77,437.28. Therefore, he was no longer overpaid in the amount of $135.18 in annuity and PSERS had credited that portion of his salary.