Joseph A. ROCHE, Petitioner,

v.

STATE EMPLOYES' RETIREMENT BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 1998.
Decided April 22, 1999.
Publication Ordered May 20, 1999.

Elliot A. Strokoff, Harrisburg, for petitioner.

Nicholas Joseph Marcucci, Harrisburg, for respondent.

Before COLINS, President Judge, and DOYLE, J., McGINLEY, J., SMITH, J., PELLEGRINI, J., KELLEY, J., and FLAHERTY, J.

KELLEY, Judge.

Joseph A. Roche appeals from the order of the State Employes' Retirement Board (board) denying his exceptions to the opinion and recommendation of a hearing officer, and ordering the State Employes' Retirement System (SERS) to implement all sanctions and remedies provided for in the Public Employee Pension Forfeiture Act (Act 140).[1] We reverse.

The facts of this case may be summarized as follows. On October 17, 1974, Roche became a member of SERS by virtue of his employment with the Pennsylvania Department of Corrections (department) at the State Correctional Institution at Graterford. Roche was initially hired as a Correctional Officer I but, through

---

1. Act of July 8, 1978, P.L. 752, *as amended*, 43 P.S. §§ 1311–1315. Section 3 of Act 140 provides, in pertinent part:

(a) Notwithstanding any other provision of law, no public official or public employee... shall be entitled to receive any retirement or other benefit or payment of any kind except a return of the contribution paid into any pension fund without interest, if such public official or public employee is convicted or pleads guilty or no defense to any crime related to public office or public employment.

(b) The benefits shall be forfeited upon entry of a plea of guilty or no defense or upon initial conviction and no payment or partial payment shall be made during the pendency of an appeal ...Such conviction or plea shall be deemed to be a breach of a public officer's or public employee's contract with his employer.

43 P.S. § 1313.

In turn, section 2 of Act 140 provides, in pertinent part:

The following words and phrases when used in this act shall have, unless the context clearly indicates otherwise, the meanings given to them in this section:

**"Crimes related to public office or public employment."** Any of the following criminal offenses as set forth in title 18 (crimes and offenses) of the Pennsylvania Consolidated Statutes or other enumerate statute when committed by a public official or public employee through his public office or position or when his public employment places him in a position to commit the crime:

\*     \*     \*

(10) § 4902 (relating to perjury)...

In addition to the foregoing specific crimes, the term also includes all criminal offenses as set forth in federal law substantially the same as the crimes enumerated herein.

43 P.S. § 1312.

promotions, he was ultimately employed as a Correctional Officer III.

In July and September of 1991, Roche was required to testify before a federal grand jury regarding an incident he had witnessed while working at S.C.I. Graterford.[2] Based on this testimony, in October of 1991 Roche was indicted by a federal grand jury on 2 counts of "False declarations before grand jury or court" in violation of 18 U.S.C. § 1623[3].

By letter dated December 17, 1991, Roche was advised that he was terminated from his position as Correctional Officer III effective December 14, 1991 based on the charges that were then pending against him.[4] On December 27, 1991, Roche executed a retirement application, retiring effective December 15, 1991 with 17.2028 years of credited service. On March 18, 1992, Roche was notified that he would be eligible for a monthly retirement benefit of $992.22, and he began to receive monthly payments in accordance with the notification.

On September 29, 1992, Roche entered into a plea agreement under which he pleaded guilty to one count charging him with false declarations before grand jury or court under 18 U.S.C. § 1623. On March 25, 1994, Roche was sentenced to a 3-year term of probation and a $1,000.00 fine based on his guilty plea.

By letter dated April 24, 1995, SERS notified Roche that his monthly annuity payments would cease with his April 1995 payment. Roche was further advised that the sanctions of section 3 of Act 140 would be imposed, and his retirement account would be turned over for collection of the annuity payments received by him since the date of his conviction.

By letter dated May 22, 1995, Roche filed an appeal of SERS' decision. By letter dated June 29, 1995, SERS advised Roche that the Appeals Committee had denied his appeal. By letter dated July 24, 1995, Roche requested an administrative appeal of the decision and an adjudication by the board. In his appeal, Roche alleged, *inter alia*, that the federal crime to which he pleaded guilty, false declarations before grand jury or court as defined at 18 U.S.C. § 1623, is not substantially the same as the Pennsylvania offense of "Perjury" as defined in section 4902 of the Pennsylvania Crimes Code (Crimes Code).[5]

2. The incident that occurred at S.C.I. Graterford involved the infliction of injuries to inmates by officers of the facility and is outlined in our prior decision in *Department of Corrections v. Roche*, 654 A.2d 64 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 541 Pa. 644, 663 A.2d 695 (1995).

3. Section 1623 provides, in pertinent part:
    (a) Whoever under oath...in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration... shall be fined under this title or imprisoned not more than five years, or both.
    \*　\*　\*
    (e) Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence.
    18 U.S.C. § 1623.

4. Although Roche appealed this termination of his employment, it was ultimately upheld on appeal to this court. *See Roche.*

5. 18 Pa.C.S. § 4902. Section 4902 of the Crimes Code states, in pertinent part:
    **(a) Offense defined.**-A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.

    \*　\*　\*

    **(f) Corroboration.**-In any prosecution under this section ...falsity of a statement may not be established by the uncorroborated testimony of a single witness.
    *Id.*

An administrative hearing was conducted before the hearing officer on May 15, 1996. On December 9, 1996, after receiving testimony and briefs by the parties in support of their respective positions, the hearing officer issued an opinion and recommendation to the board. In the opinion, the hearing officer determined, *inter alia*, that: the forfeiture provisions of section 3 of Act 140 applied in this case; the forfeiture remedy sought by SERS is within its authority and covers the entire period Roche was employed by the department; and the provisions of Act 140 do not violate the provisions of the United States and Pennsylvania Constitutions. In particular, the hearing examiner determined, *inter alia*, that the federal offense to which Roche pleaded guilty was substantially the same as the Pennsylvania crime of perjury as defined at section 4902 of the Crimes Code. As a result, the hearing examiner issued a recommendation that the board deny Roche's appeal and implement all of the applicable sanctions and remedies of Act 140.

On January 6, 1997, Roche filed exceptions to the hearing examiner's opinion with the board. On January 27, 1997, SERS filed a response to Roche's exceptions. In the exceptions, Roche argued, *inter alia*, that the hearing officer erred in determining that the federal offense to which he pleaded guilty was substantially the same as the Pennsylvania crime of perjury.

On March 20, 1998, the board issued an order and opinion disposing of Roche's exceptions. In the opinion, the board adopted, as its own, the hearing examiner's findings of fact, discussion, conclusions of law and recommendation. As a result, the board issued an order denying Roche's appeal request to avoid the forfeiture of his pension, and directing SERS to implement all sanctions and remedies of Act 140 effective on the date of Roche's sentencing. Roche then filed the instant appeal of the board's order.

In this appeal Roche claims: (1) the board erred in adopting and affirming the hearing officer's determination that the federal crime of false declarations before grand jury or court as defined at 18 U.S.C. § 1623 is substantially the same as the Pennsylvania crime of perjury as defined in section 4902 of the Crimes Code; (2) the board erred in adopting and affirming the hearing officer's determination that the commission of the crime was related to his public office or public employment as required by section 3 of Act 140; (3) the forfeiture provisions of section 3 of Act 140 violate the cruel punishment prohibition of Article 1, Section 13 of the Pennsylvania Constitution [6]; (4) the catchall provision of section 2 of Act 140, including all substantially similar federal offenses, is impermissibly vague in violation of the due process guarantees of Article 1, Section 1 of the Pennsylvania Constitution [7]; (5) the catchall provision of section 2 of Act 140 represents an impermissible delegation of legislative authority in violation of Article 2, Section 1 of the Pennsylvania Constitution [8]; and (6) the board erred in adopting and affirming the hearing examiner's determination that the overpayment of bene-

---

**6.** Article 1, Section 13 of the Pennsylvania Constitution states:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted.

Pa. Const. art. I, § 13.

**7.** Article 1, Section 1 of the Pennsylvania Constitution states:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of

enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. art. I, § 1.

**8.** Article 2, Section 1 of the Pennsylvania Constitution states:

> The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.

Pa. Const. art. II, § 1.

fits by SERS, for the year following the sentencing on his guilty plea, should be forfeited and recouped by SERS.

■ We initially note that the scope of our review of the board's order is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Braig v. Pennsylvania State Employes' Retirement Board*, 682 A.2d 881 (Pa.Cmwlth.1996).

Roche first claims that the board erred in adopting and affirming the hearing officer's determination that the federal crime of false declarations before grand jury or court as defined at 18 U.S.C. § 1623 is substantially the same as the Pennsylvania crime of perjury as defined in section 4902 of the Crimes Code. Rather, he contends that the Pennsylvania crime of perjury is substantially the same as the federal crime of "Perjury" as defined at 18 U.S.C. § 1621 [9], and not to the federal crime of false declarations before grand jury or court at section 1623 to which he pleaded guilty. Thus, he alleges, the board erred in affirming the hearing officer's determination that the federal crime to which he pleaded guilty is included within the definition of "crimes related to public office or public employment" under section 2 of Act 140, and compels the forfeiture of his retirement benefits under section 3 of Act 140.

Although we have not previously interpreted the "substantially the same as" provision of section 2 of Act 140 [10], we have interpreted a like provision contained in section 1581 of the Pennsylvania Vehicle Code, 75 Pa.C.S. § 1581 [11]. In *Pap-*

---

**9.** Section 1621 provides, in pertinent part:
Whoever–
  **(1)** having taken an oath before a competent tribunal, officer or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, ...willfully and contrary to such oath states or subscribes any material matter to which he does not believe to be true...
is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both...
18 U.S.C. § 1621.

**10.** In *Shiomos v. State Employes' Retirement Board*, 533 Pa. 588, 626 A.2d 158 (1993), the Pennsylvania Supreme Court *sua sponte* raised and considered the issue of whether Shiomos' conviction under the Hobbs Act, 18 U.S.C. § 1951, was substantially similar to one of the enumerated state offenses found in section 2 of Act 140. The court stated, in a conclusory manner, that the conviction under the Hobbs Act was equivalent to the Pennsylvania crime of bribery in official and political matters as defined in section 4701 of the Crimes Code. *Shiomos*, 533 Pa. at 593, 626 A.2d at 161. In so doing, the court relied on its prior decision in *Petition of Hughes*, 516 Pa. 89, 532 A.2d 298 (1987), in which it determined that: the facts underlying a federal conviction for conspiracy to violate the Hobbs Act would constitute a violation of section 4701 of the Pennsylvania Crimes Code; and such conviction is for an "infamous crime" thereby disqualifying the perpetrator from holding public office under Article 2, Section 7 of the Pennsylvania Constitution. *Hughes*, 516 Pa. at 95–99, 532 A.2d at 301–303. However, this succinct analysis is of no aid in disposing of the claim raised in the instant appeal.

**11.** By enacting section 1581 of the Vehicle Code, Pennsylvania became a party to the Interstate Driver's License Compact which permits sanctions to be imposed in Pennsylvania for certain offenses committed in other states that are parties to the Compact. Section 1581 states, in pertinent part:

ARTICLE IV
Effect of Conviction
  (a) The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to Article III of this compact, as it would if such conduct had occurred in the home state in the case of convictions for:
  (1) manslaughter or negligent homicide resulting from the operation of a motor vehicle;
  (2) driving a motor vehicle while under the influence of intoxication liquor or a narcotic drug or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle;

*pacena v. Department of Transportation,* 716 A.2d 714 (Pa.Cmwlth.1998), Pappacena was convicted in New York for the offense of "Driving while ability impaired" by the consumption of alcohol (DWAI) [12]. Pursuant to section 1581, the Pennsylvania Department of Transportation (DOT) suspended Pappacena's operating privilege for one year after New York, a party state to the Compact, notified DOT of his conviction. DOT informed Pappacena that his DWAI conviction in New York was substantially similar to the Pennsylvania offense of "Driving under influence of alcohol or controlled substance" (DUI) as defined at 75 Pa.C.S. § 3731. After Pappacena's statutory appeal of the suspension was sustained by the Court of Common Pleas of Pike County, DOT appealed the court's order to this Court. On appeal, DOT claimed that New York's DWAI statute was substantially similar to Pennsylvania's DUI statute, and the suspension under section 1581 was appropriate.

Relying on our decision in *Olmstead v. Department of Transportation,* 677 A.2d 1285 (Pa.Cmwlth.1996), *aff'd,* 550 Pa. 578, 707 A.2d 1144 (1998), we determined that the two offenses were not substantially similar to warrant the sanctions allowed by section 1581. *Pappacena,* 716 A.2d at 715–716. In that case, Olmstead was convicted in New York under its DWAI statute. In the appeal of his license suspension to this Court, Olmstead claimed that the New York DWAI statute is not substantially similar to the Pennsylvania DUI statute, that there is a distinction between the DWAI statute and New York's "Driving while intoxicated" (DWI) statute [13], and that the Pennsylvania DUI statute is substantially similar to New York's DWI statute.

To resolve these claims, this Court reviewed New York case law and found that the Court of Appeals in *People v. Cruz,* 48 N.Y.2d 419, 423 N.Y.S.2d 625, 399 N.E.2d 513 (1979), *appeal dismissed,* 446 U.S. 901, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980), explained the distinction between the DWAI and the DWI statutes. *Olmstead,* 677 A.2d at 1287. In *Cruz,* it was stated that with respect to the DWAI statute, "the question in each case is whether, by voluntarily consuming alcohol, this particular defendant has actually impaired, *to any extent,* the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver." *Id., quoting Cruz,* 423 N.Y.S.2d at 628, 399 N.E.2d at 516.

In contrast, with respect to the DWI statute, it was explained in *Cruz* that it "is a greater degree of impairment which is reached when the driver has voluntarily consumed alcohol to the extent that he is incapable of employing the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver." *Id., quoting Cruz,* 423 N.Y.S.2d at 629, 399 N.E.2d at 517. This Court also noted that, with respect to a prosecution under the Pennsylvania DUI statute, it must be shown that the driver of a motor vehicle was under the influence of alcohol to a degree that his or her abilities to operate the

(3) any felony in the commission of which a motor vehicle is used; or

(4) failure to stop and render aid in the event of a motor vehicle accident resulting in the death or personal injury of another.

\*   \*   \*

(c) If the laws of a party state do not provide for offenses or violations denominated or described in precisely the words employed in subdivision (a) of this article, such party state shall construe the denominations and descriptions appearing in subdivision (a) of this article as being applicable to and identifying those offenses or violation of **a substantially similar nature** and the laws of such party state shall contain such provisions as may be necessary to ensure that full force and effect is given to this article.

75 Pa.C.S. § 1581 (emphasis added).

**12.** *See* N.Y. Vehicle & Traffic Law, Article 31, § 1192(1).

**13.** *See* N.Y. Vehicle & Traffic Law, Article 31, § 1192(2) and (3).

vehicle were substantially impaired to the degree that he or she could not drive safely. *Id., citing Commonwealth v. Griscavage,* 512 Pa. 540, 517 A.2d 1256 (1986), *Commonwealth v. Horn,* 395 Pa. 585, 150 A.2d 872 (1959), and *Commonwealth v. Byers,* 437 Pa.Super. 502, 650 A.2d 468 (1994).

Based on the foregoing, we found that the New York DWAI statute punishes a driver whose ability to operate a motor vehicle is merely impaired by the consumption of alcohol, whereas the Pennsylvania DUI statute punishes a driver whose ability is substantially impaired by this consumption. *Id.* at 1287–1288. As a result, we determined that New York's DWAI statute was not substantially similar to Pennsylvania's DUI statute, and reversed the suspension imposed pursuant to section 1581 of the Vehicle Code. *Id.*

Likewise, in *Eck v. Department of Transportation,* 713 A.2d 744 (Pa.Cmwlth. 1998), *petition for allowance of appeal granted,* —— Pa. ——, —— A.2d —— (No. 605 M.D. Appeal Docket, March 11, 1999), Eck was convicted under Maryland's "Driving while under the influence of alcohol" (DUI) statute [14]. Pursuant to section 1581, DOT suspended Eck's operating privileges for one year after Maryland, a party state to the Compact, notified DOT of his conviction. After Eck's statutory appeal of the suspension was sustained by the Court of Common Pleas of Lehigh County, DOT appealed the court's order to this Court. On appeal, DOT claimed that Maryland's DUI statute was substantially similar to Pennsylvania's DUI statute, and the suspension under section 1581 was appropriate.

In addressing this claim, we noted the provisions of section 21–902 of the Maryland statute defining the offenses of "Driving while intoxicated" (DWI) and DUI. Subsection (a) of this section, defining the DWI offense, provides, "Driving while intoxicated.-A person may not drive or at-

tempt to drive any vehicle while intoxicated." *Eck,* 713 A.2d at 745 *quoting* Md. Code, Transp. § 21–902. Subsection (b) of this section, defining the DUI offense, provides, "Driving while under the influence of alcohol.-A person may not drive or attempt to drive any vehicle while under the influence of alcohol." *Id.*

In analyzing these provisions, we determined that the use of any amount of alcohol would support a conviction under the DUI statute, and Pennsylvania's DUI statute was more akin to Maryland's DWI statute, requiring a degree of impairment. *Id.* As a result, we determined that Maryland's DUI statute was not substantially similar to Pennsylvania's DUI statute, and reversed the suspension imposed pursuant to section 1581 of the Vehicle Code. *Id.* at 745–746.

Therefore, in addressing the claim in the instant appeal, it is necessary to examine the offense to which Roche pleaded guilty, false declarations before grand jury or court defined at 18 U.S.C. § 1623, and compare it to the federal crime of perjury defined at 18 U.S.C. § 1621 and the Pennsylvania crime of perjury defined in section 4902 of the Crimes Code. As noted above, section 1632 states, in pertinent part, that "[w]hoever under oath...in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration..." is guilty of the offense of false declarations before grand jury or court. 18 U.S.C. § 1623(a). In addition, in order to obtain a conviction under this section, "[p]roof beyond a reasonable doubt...is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence." 18 U.S.C. § 1623(e). In contrast, section 1621 states, in pertinent part, that "[w]hoever ...having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be adminis-

14. *See* Md.Code, Transp. § 21–902(b).

tered, that he will testify, declare, depose, or certify truly,...willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true...is guilty of perjury...." 18 U.S.C. § 1621(1).

As the United States Court of Appeals for the Third Circuit has noted:

> [T]here are distinctions between the crime of general federal perjury, 18 U.S.C. § 1621, and the recently-created crime, "False declarations before grand jury or court", 18 U.S.C. § 1623.
>
> One difference concerns "the general rule in prosecutions for perjury [under § 1621]...that the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused set forth in the indictment as perjury." *Hammer v. United States*, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118 [ (1926) ]. *Weiler v. United States*, 323 U.S. 606, 610, 65 S.Ct. 548, 89 L.Ed. 495 [ (1945) ], reiterated the Hammer holding and reemphasized: "The rule has long prevailed, and no enactment in derogation of it has come to our attention. The absence of such legislation indicates that it is sound and has been found satisfactory in practice."
>
> Legislation did come forward, however, in the Organized Crime Control Act of 1970, of which *18 U.S.C. § 1623* is a part, Title IV, Section 401(a), October 15, 1970, 84 Stat. 932. The Act makes it a crime for one to knowingly make "any false material declaration" before any court or grand jury of the United States. Section 1623(e) specifically provides: "Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence."
>
> The legislative history discloses: "This Title [Title IV, FALSE DECLARATIONS] is intended to facilitate Federal perjury prosecutions and establishes a new false declaration provision applicable in Federal grand jury and court proceedings. It abandons the so-called two-witness and direct evidence rule in such prosecutions and authorizes a conviction based on irreconcilably inconsistent declarations under oath..." 1970 U.S.Code Cong. & Ad. News 4007, 4008.
>
> Abolition of the "two-witness rule" for prosecutions under § 1623 is not the only distinction between the two statutes. As we noted in *United States v. Lardieri*, 497 F.2d 317, 320 (3d Cir. 1974), rev'd in part on other grounds on rehearing before original panel, 506 F.2d 319 (3d Cir.1974), Congress chose to provide different mens rea elements: "Unlike the general perjury statute, § 1623 requires that a false statement be made 'knowingly' rather than 'willfully'." Also, in 1623 Congress expressly limited the tribunals before which the oath is taken.

*United States v. Gross*, 511 F.2d 910, 914–915 (3d Cir.), *cert. denied*, 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975) (footnotes omitted). *See also*, *United States v. Sherman*, 150 F.3d 306, 311 (3d Cir.1998) ("We have previously noted the distinctions between the two statutes: (1) § 1623 does not require that the prosecution employ the 'two-witness rule' for proving perjury; (2) § 1623 has a reduced mens rea requiring only that one 'knowingly' commit perjury rather than 'willfully', as required under § 1621; and (3) § 1623 is restricted to testimony before grand juries and courts and is therefore more limited in reach than § 1621.") (*citing Gross* ).

As noted above, section 4902 of the Crimes Code states, in pertinent part, that "[a] person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation ...when the statement is material and he does not believe it to be true." 18 Pa.C.S. § 4902(a). In addition, section 4902 further provides that "[i]n any prosecution under this section...falsity of a statement may not be

established by the uncorroborated testimony of a single witness." 18 Pa.C.S. § 4902(f).

As the Pennsylvania Superior Court has noted:

> The elements of the crime of perjury were set forth in *Commonwealth v. Billingsley*, 160 Pa.Super. 140, 50 A.2d 703, affirmed on the opinion of Judge (later Justice) ARNOLD in 357 Pa. 378, 54 A.2d 705, as follows: "The word 'perjury' is frequently used as synonymous with 'false testimony'. But the *crime* of perjury has a number of elements: (a) An oath to tell the truth must be taken by the accused, and (b) administered by legal authority, (c) in a judicial proceeding (or statutory affidavit). (d) The accused must have testified in such proceeding, and (e) his testimony must be material to the judicial proceeding. (f) the testimony assigned as perjury must be false, and (g) must be given wilfully, and corruptly, and with knowledge of its falsity (or given recklessly), and for the purpose of having it believed. As to none of these elements is there a requirement as to the quantity of proof *except* as to the falsity of the testimony, i.e. the assignment of perjury. As to the falsity, and as to it alone, is there a rule that conviction may not be had upon the testimony of one witness..."
>
> Stated tersely, to constitute perjury it must appear that (1) the oath was false; (2) the intention willful; (3) the proceedings judicial; (4) the party lawfully sworn; (5) the assertion absolute and (6) the falsehood material to the issue...

*Commonwealth v. Yanni*, 208 Pa.Super. 191, 222 A.2d 617, 619 (1966). *See also, Commonwealth v. Bidner*, 282 Pa.Super. 100, 422 A.2d 847, 850 (1980) ("[I]t is appropriate to observe that § 4902 is a general penal provision encompassing all wilfully false statements in any official proceeding.")

■ Thus, in order to obtain a conviction under either the Pennsylvania or the federal perjury statute, it must be shown beyond a reasonable doubt that, as an element of the offense, the accused acted willfully. 18 U.S.C. § 1621; 18 Pa.C.S. § 4902(a); *Sherman; Gross; Yanni.* In addition, under either the Pennsylvania or the federal perjury statute, a conviction cannot be based on the uncorroborated testimony of one witness. 18 U.S.C. § 1621; 18 Pa.C.S. § 4902(f); *Sherman; Gross; Yanni.*

■ In contrast, in order to obtain a conviction for the federal crime of false declarations before grand jury or court, it must merely be shown that the accused acted knowingly. 18 U.S.C. § 1623(a); *Sherman; Gross.* In addition, in order to obtain a conviction under this section, there is no burden to prove the offense by any particular number of witnesses or by documentary or other type of evidence. 18 U.S.C. § 1623(e); *Sherman; Gross.*

■ Based on the foregoing, it is clear that the federal crime of false declarations before grand jury or court as defined at 18 U.S.C. § 1623 is not substantially the same as the Pennsylvania crime of perjury defined in section 4902 of the Crimes Code. Rather, it is apparent that the Pennsylvania crime of perjury is substantially the same as the federal crime of perjury defined at 18 U.S.C. § 1621. *See, e.g., Pappacena; Eck.*

As a result, the board erred in adopting and affirming the hearing officer's determination that the federal crime of false declarations before grand jury or court as defined at 18 U.S.C. § 1623 is substantially the same as the Pennsylvania crime of perjury as defined in section 4902 of the Crimes Code. In addition, the board likewise erred in affirming the hearing officer's determination that the federal crime to which Roche pleaded guilty is included within the definition of "crimes related to public office or public employment" under section 2 of Act 140, and compels the forfeiture of his retirement benefits under

section 3 of Act 140.[15]

Accordingly, the order of the board is reversed.

Judges DOYLE and SMITH dissent.

*ORDER*

AND NOW, this 22nd day of April, 1999, the order of the State Employes' Retirement Board, dated March 20, 1998 at Docket No. 1995–25, is reversed.

---

**15.** Based on our disposition of this issue, we will not address the other claims raised in this appeal.