**Joseph W. GIERSCHICK, Jr., Petitioner,**

v.

**STATE EMPLOYEES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 13, 1999.
Decided June 23, 1999.

Adam Sager, Pottstown, for petitioner.

Nicholas J. Marcucci, Harrisburg, for respondent.

Before COLINS, President Judge, PELLEGRINI, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Joseph W. Gierschick, Jr. (Claimant) petitions for review of a State Employees' Retirement Board's (Board) order that required him to forfeit his retirement benefits pursuant to the Public Employee Pension Forfeiture Act (Act 140)[1] earned up to and including the date of his guilty plea

1. Act of July 8, 1978, P.L. 752, 43 P.S. §§ 1311–1315.

for committing perjury before a federal grand jury. We affirm.

The facts of this case, as set forth by the State Employees' Retirement System (SERS) hearing examiner, are as follows. When he started work in June 1981 as a corrections officer with the Department of Corrections at Graterford State Correctional Institution (Graterford), Claimant became a member of the SERS. As a result of a prison inmate riot at the Camp Hill Prison, on November 6, 1989, several Camp Hill inmates were transferred to Graterford. Claimant was asked to videotape the inmates as they exited the transfer bus and entered Graterford. Claimant stated he believed that he had videotaped the last prisoners leaving the bus, but the next day learned that prison guards had allegedly assaulted some of those prisoners. A month later, Claimant, without counsel, was questioned by the state police about the assault. In March 1991, Claimant appeared, without counsel, before a federal grand jury and repeated his testimony that he believed he had videotaped the last prisoners to leave the bus. Claimant's testimony was critical since the timing of the alleged assault was significant to the credibility and veracity of the prisoners' testimony.

In October 1991, the federal grand jury indicted Claimant for perjury. Claimant's indictment was consolidated with those of the prison guards charged with the assault. Claimant engaged counsel, and, on that counsel's advice and in exchange for a probationary sentence, pled guilty to the perjury charge on January 11, 1993. Claimant stated he so pled rather than risk a conviction and possible jail time should he be convicted with the prison guards. Counsel assured Claimant that a guilty plea would not affect his retirement account. Claimant never testified at the trial of the prison guards, who were found not guilty. On April 21, 1994, Claimant was fined two thousand dollars and sentenced to three years probation for his perjury conviction.

As a result of his conviction, Claimant was suspended and later discharged from Commonwealth employment. He filed a grievance through his union, which went to arbitration. The arbitrator ordered Claimant be returned to his former position, noting that Claimant was not involved in beating any inmates but was only videotaping their leaving the bus. The arbitrator stated that he weighed Claimant's guilty plea in light of the illness of Claimant's wife and the prosecutor's promise of a lighter sentence. The Commonwealth did not appeal the arbitrator's reinstatement decision.

In an April 24, 1995, letter, SERS notified Claimant that it had learned of his guilty plea and subsequent conviction and informed Claimant that his total credited state service was forfeited as of the day after his conviction, April 22, 1994. Claimant appealed that decision and requested a formal hearing. A SERS hearing examiner heard testimony and made recommendations based on his findings of fact and conclusions of law. The hearing examiner concluded that Claimant's guilty plea was related to his public employment making Claimant's benefits subject to forfeiture under Act 140. Claimant appealed the hearing examiner's decision to the Board.

Before the Board, Claimant again argued that, although he pled guilty to perjury, the provisions of Act 140 did not apply to him. The Board disagreed and found Claimant pled guilty to a crime related to public office or public employment, and further concluded its decision concerning Claimant's pension benefits was not restricted by the union arbitrator's determination. The Board decided the crime to which Claimant pled guilty, 18 U.S.C. § 1623, False Declarations Before Grand Jury or Court, is substantially similar to the enumerated Pennsylvania crime of perjury, Section 4902 of the Crimes Code, 18 Pa.C.S. § 4902, and thus triggered a forfeiture of pension benefits under Act 140. The Board ordered that Claimant's retire-

ment benefits earned up to and including the date of his guilty plea be forfeited.

Claimant appeals to this Court,[2] again asserting that his plea of guilty to perjury was not a crime relating to his public office or employment and thus Section 3(a) of Act 140[3] did not apply to him. Claimant further argues SERS is collaterally estopped from challenging what Claimant contends is the arbitrator's finding that his guilty plea and conviction were not causally related to his employment.[4]

Section 3(a) of Act 140 provides that:

[N]o public official or public employe . . . shall be entitled to receive any retirement or other benefit or payment of any kind except a return of the contribution paid into any pension fund without interest, if such public official or public employee is convicted or pleads guilty or no defense to any crime related to public office or public employment.

■ A crime related to public office or public employment includes a list of enumerated Pennsylvania crimes, as well as federal crimes that are substantially the same as those on the Pennsylvania list.[5] The crime must be committed by such a public official or employee when that employee's public employment places him in a position to commit the crime. *Shiomos v. State Employes' Retirement Board*, 533 Pa. 588, 626 A.2d 158 (1993).

Claimant argues it was the Commonwealth's burden to prove that there was a

logical or temporal relationship between his plea of guilty and his work at Graterford. He claims there is no assertion that he did anything wrong within the scope of his employment as a Graterford guard. Rather, he asserts that the purported false testimony arose as a result of his "being caught up in the criminal justice system." He repeats that the arbitrator found that his plea and conviction were related to the circumstances of his getting ready for trial in January 1993. Consequently, Claimant argues his crime was not related to his public office or public employment. We disagree.

■ Claimant has the burden of proof establishing his position. *Shoemaker v. State Employes' Retirement Board*, 688 A.2d 751 (Pa.Cmwlth.1997), *petition for allowance of appeal denied*, 548 Pa. 676, 698 A.2d 597 (1997). Because no reported appellate decisions answer whether perjured testimony about one's conduct during one's performance of public employment duties is a crime related to public office or public employment, this Court must look at the standard rules of statutory construction, *i.e.*, the occasion and necessity for the statute, the mischief to be remedied, the object to be attained, the consequences of a particular interpretation, as well as other administrative interpretations.[6] Furthermore, the words and phrases in a statute are to be construed according to their common meaning and accepted usage,[7] and it is unlikely the General Assembly intend-

---

2. The construction given the retirement statute by the Board, the entity charged with its execution and application, is entitled to considerable deference absent strong reasons to suggest that its interpretation is erroneous. *Card v. Pennsylvania School Employes' Retirement Board*, 83 Pa.Cmwlth. 602, 478 A.2d 510 (1984).

3. 43 P.S. § 1313(a).

4. In *Roche v. State Employes' Retirement Board*, 731 A.2d 640 (Pa.Cmwlth.1999)(en banc memorandum opinion), the issue raised concerned a claim that the federal statute to which Roche pled guilty was not substantially similar to the Pennsylvania perjury statute.

That issue was neither raised nor argued in the present case.

5. See Section 2 of Act 140, 43 P.S. § 1312. Subsection (10) lists the crime of perjury. The list ends with a sentence noting the list includes "all criminal offenses as set forth in federal law substantially the same as the crimes enumerated herein."

6. Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c)(1), (3), (4), (6), (8).

7. Section 1903 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a).

ed a result inconsistent with that common understanding, *Card*, or intended a result that is absurd or unreasonable. *Shafer v. State Employes' Retirement Board*, 548 Pa. 320, 696 A.2d 1186 (1997).

 There is substantial evidence supporting the Board's finding that the perjury occurred when Claimant's public employment placed him in a position to observe the events that were later the subject of his false testimony. While Claimant's job duties may not have included testifying before a grand jury, the fact that he was before the grand jury and not at Graterford did not sever the relationship between his conduct and his public employment. Claimant perjured himself before a federal grand jury about a work incident that Claimant both observed and videotaped. Based on these findings, we conclude that the Board correctly determined that the crime of perjury is related to public office or public employment. To hold otherwise would remove from the scope of Act 140 any cover-up, obstruction of justice or perjury unless the specific employment duties included giving testimony when required. The Board's interpretation of the retirement statute is entitled to considerable deference. *Card.* We agree with the Board that the General Assembly did not intend Claimant's narrow reading of Act 140.

Claimant next argues that the Board is collaterally estopped from finding his guilty plea was causally connected to his employment since the arbitrator had found otherwise. The arbitrator reasoned Claimant was not charged with assaulting any inmates and was under pressure from his own attorney to plead guilty. Claimant contends that the lack of a causal relationship between his employment and his guilty plea was a necessary fact, which

prompted the arbitrator not to disturb Claimant's seniority credits. Consequently, Claimant argues the doctrine of collateral estoppel prevents the Board from challenging that alleged finding. *Wachter v. Ascero*, 379 Pa.Super. 618, 550 A.2d 1019 (1988).[8] Again, we disagree.

 As a matter of law, collateral estoppel cannot apply. The Board cannot be estopped from applying the positive provisions of retirement law. *Finnegan v. Public School Employees' Retirement Board*, 126 Pa.Cmwlth. 584, 560 A.2d 848 (1989), *affirmed*, 527 Pa. 362, 591 A.2d 1053 (1991). Claimant's union grievance that he be reinstated to employment has nothing to do with the statutory consequences of his guilty plea to a crime. The arbitrator's award must be read in the context of the scope of the arbitrator's jurisdiction and within the bounds of the collective bargaining agreement. While the arbitrator may be able to grant seniority within the confines of the collective bargaining agreement, he is without jurisdiction over Claimant's retirement benefits or the SERS' service credit necessary to generate those benefits. Whether by the action of its own employees or by those of other agencies, Act 140 leaves no discretion to any administrative agency once the triggering conviction or guilty plea occurs. *Apgar v. State Employes' Retirement System*, 655 A.2d 185 (Pa.Cmwlth.1994).

Further, the arbitrator's decision does not contain the factual finding Claimant asserts. The arbitrator did not make a finding that there was no causal connection between Claimant's crime and his employment. Rather, the arbitrator listed a number of mitigating circumstances that he found justified Claimant's plea. The arbitrator concluded that a) termination was

---

8. Outlining the doctrine of collateral estoppel, Claimant argues it applies if 1) the issue is identical, 2) there was a final judgment on the merits, 3) the party is the same or in privity to the party in the prior case, 4) that party had a full and fair opportunity to litigate the issue in the prior proceeding, and 5) the determina-

tion was essential to the judgment. *Wachter.* Applying that doctrine, Claimant concludes the issue is identical; there was a final judgment in that the Board chose not to appeal the arbitrator's decision; and the Board was a party to that action with a full and fair opportunity to litigate the issue.

an unduly harsh punishment in light of the perjury charge, b) Claimant was not beyond rehabilitation, c) Claimant was only videotaping the inmates' transfer and not actually assaulting them, and d) Claimant was not hardened against the system. The arbitrator also considered the impact of a discharge on Claimant's ill wife and granted the union's request that a lesser degree of discipline be applied. The arbitrator did not find a lack of causal connection between Claimant's perjury and his public duties. Rather, the arbitrator emphasized that his decision was a decision in response to the "unique circumstances present ... and not to be cited for any precedential value." (Arbitrator's decision, p. 9).

Accordingly, the order of the State Employees' Retirement Board is affirmed.

### ORDER

AND NOW, June 23, 1999, the order of the State Employees' Retirement Board in the above-captioned matter is affirmed.

Concurring opinion by Judge PELLEGRINI.

PELLEGRINI, Judge, concurring.

While I join with the majority's well-reasoned decision, I write separately only to explain how this case differs from *Roche v. State Employees' Retirement Board,* 731 A.2d 640 (Pa.Cmwlth.1999). At issue in both cases is whether a claimant's pension is foreclosed by Section 3(a) of Act 140, 43 P.S. § 1313, requiring forfeiture of a pension when the claimant is found guilty or pleads guilty to certain enumerated crimes. Section 2 of Act 140, 43 P.S. § 1312, lists "crimes related to public office or public employment" that disqualify a claimant from receiving his or her pension in pertinent part as follows:

> Any of the following criminal offenses as set forth in title 18 (crimes and offenses) of the Pennsylvania Consolidated Statutes or other enumerated statute when committed by a public official or public

employee through his public office or position or when his public employment places him in a position to commit the crime:

* * *

(10) § 4902 (relating to perjury);

(11) § 4903(a) (relating to false swearing);

(12) § 4904 (relating to unsworn falsification to authorities);

(13) § 4906 (relating to false reports to law enforcement authorities);

* * *

> In addition to the foregoing specific crimes, the term also includes all criminal offenses as set forth in federal law substantially the same as the crimes enumerated herein.

In *Roche,* the Retirement Board only found and argued that the federal crime of false swearing was substantially similar to the federal crime of perjury and not that it was comparable to any of the other crimes enumerated above. No other claim was made by the Retirement Board that the federal false swearing was comparable to any other disqualifying crime. Answering the question presented to us of whether the federal crime of false swearing was substantially similar to the state crime of perjury and, if not, whether Roche was entitled to his pension, we reversed the Board's decision forfeiting Roche's pension benefits finding that the federal crime of false swearing was not substantially the same as the state crime of perjury. In this case, however, the issue is whether a federal crime of perjury is the same as the state crime of perjury. Because those crimes are substantially the same, I join with that majority's analysis so holding.